UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FAIR HOUSING IN HUNTINGTON
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA
HAWKINS, LYNDA JOHN, and IAN JOHN,

                              Plaintiffs,         **MEMORANDUM OF DECISION
                                                            AND ORDER**
                                                             02-CV-2787 (DRH) (WDW)

        - against -

TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF
HUNTINGTON, and TOWN OF
HUNTINGTON PLANNING BOARD,

                              Defendants.
------------------------------------------------------------X
**A P P E A R A N C E S :**

**For the Plaintiffs:**
**Skadden, Arps, Slate, Meagher & Flom, LLP**
Four Times Square
New York, New York 10036
By: Jeffrey Glekel, Michael D. Birnbaum, Gary J. Hacker

**Lawyers' Committee for Civil Rights of the Boston Bar Association**
294 Washington Street
Suite 443
Boston, Massachusetts 02108
By: Nadine Cohen

**The National Association for the Advancement of Colored People**
4805 Mt. Hope Drive
Baltimore, Maryland 21215
By: Anson A. Asaka

**For the Defendants:**
**Cullen and Dykman LLP**
Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
By: James G. Ryan, Thomas B. Wassel, Jennifer McLaughlin

**HURLEY, District Judge:**

Plaintiffs Fair Housing in Huntington Committee, Huntington Branch, NAACP, Bernard Peyton, Athena Hawkins, Lynda John, and Ian John (collectively, "Plaintiffs") move for reconsideration, pursuant to Local Rule 6.3, of this Court's March 23, 2005 Memorandum of Decision and Order (the "March 23, 2005 Order") which granted the motion by Defendants Town of Huntington, New York (the "Town"), Town Board of the Town of Huntington, and Town of Huntington Planning Board (collectively, "Defendants") for judgment on the pleadings and dismissed the Amended Complaint in its entirety. For the reasons that follow, Plaintiffs' motion is granted and upon reconsideration, Defendants' motion to dismiss Plaintiffs' first, second, third, and fifth causes of action is denied.

## *BACKGROUND*

The background of this case is set forth in the March 23, 2005 Order and the Second Circuit's decision in *Fair Housing in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357 (2d Cir. 2003), familiarity with which is assumed. Thus, the Court will only state the facts necessary for disposition of the instant motion.

Essentially, Plaintiffs seek injunctive and other relief against Defendants with respect to their allegedly discriminatory actions relating to their re-zoning of, and approvals for, two residential developments, to wit, The Greens at Half Hollow ("the Greens") and Ruland Road, also known as Sanctuary, under various federal laws. On March 23, 2005, the Court granted Defendants' motion to dismiss the Amended Complaint and dismissed this case in its entirety. Plaintiffs now move for reconsideration.

2

**DISCUSSION**

## I. *Applicable Legal Standard for Reargument*

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "party may not advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

## II. *Plaintiffs' Motion for Reconsideration is Granted*

Plaintiffs concede that they are "not ask[ing] the Court to examine any new legal issues or arguments" and that they are "not offer[ing] any facts not already articulated in Plaintiffs' Amended Complaint." (Pls.' Mem. at 6.) Rather, they are requesting that the Court "review the facts already in the record and reconsider whether, under the fair housing laws and

binding Supreme Court and Second Circuit precedent, Plaintiffs have stated a claim for which relief may be granted." (*Id.*) Apparently, they are arguing that the Court overlooked factual and legal arguments presented in the original motion papers. Because the Court agrees, Plaintiffs' motion for reargument is granted.

      A.      *The Fair Housing Act*

The first cause of action asserted a claim under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. (the "FHA"). As noted in the March 23, 2005 Order, the FHA forbids racial discrimination with respect to the sale or rental of a dwelling. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (citing 42 U.S.C. § 3605(a).) A claim under the FHA can be brought under one of two alternate theories: disparate impact or disparate treatment. *Fair Housing in Huntington Comm.*, 316 F.3d at 366 (citing *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)). Here, Plaintiffs rely on a theory of disparate impact.

In order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly neutral practice actually or predictably has a discriminatory effect; that is, has a significantly adverse or disproportionate impact on minorities, or perpetuates segregation. *Fair Housing in Huntington Comm.*, 316 F.3d at 366 (citations omitted). Plaintiffs are not required to show discriminatory intent. *Id.* (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2d Cir. 1988)). Provided Plaintiffs have made this showing, the burden then shifts to Defendants to demonstrate that its actions furthered a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *Id.*

In the March 23, 2005 Order, the Court dismissed Plaintiffs' FHA claims based

upon the Second Circuit's decision in *Acevedo v. Nassau County*, 500 F.2d 1078 (2d Cir. 1974). In *Acevedo*, noting that there is "no constitutional or statutory duty to provide low income housing," *id.* at 1080-81, the Second Circuit held that the defendants' construction of low income *senior* housing did not require them to also provide low income *family* housing. *Id.* at 1081; *see also Brecker v. Queens B'nai B'rith Housing Dev. Fund* Co., 798 F.2d 52, 57 (2d Cir. 1986) ("[T]he providing of housing solely for the elderly, without also providing housing for some other protected group, does not constitute discrimination against nonelderly members of this other protected group.") (citing *Acevedo*). Relying on *Acevedo*, this Court found that the FHA was not implicated based on the allegations in the Amended Complaint:

> As Defendants correctly point out, the FHA imposes liability upon municipalities which erect obstacles to proposed housing. . . . *Huntington Branch*, 844 F.2d at 938 . . . . Here, the Town has not passed any resolutions which obstruct low income housing for minorities, rather it has permitted the land to be used for senior citizens and for studio/one bedroom apartment[s]. There is no constitutional requirement that the Town include low income minority housing in its plan.

(Mar. 23, 2005 Order at 14.)

Without prescinding from the holding in *Acevedo*, and recognizing that Defendants have no affirmative obligation to provide low income family housing, the Court nonetheless finds that drawing all inferences in Plaintiffs' favor, the Amended Complaint does state a claim under the FHA insofar as it alleges that Defendants' actions effectively blocked the development of affordable multi-family housing likely to attract minorities. In this regard, citing the Second Circuit's decision in *Huntington Branch*, 844 F.2d 926, Plaintiffs allege that the Town "has an extended and well documented history of concentrating Minority Families in the least desirable areas of Huntington in violation of the Fair Housing Act." (Am. Compl. ¶ 3.) In

5

*Huntington Branch*, the Second Circuit directed the Town to amend its zoning to allow for construction of affordable family housing in a predominantly white area after finding that the Town's zoning practices violated the FHA, 844 F.2d at 942.  Against that backdrop, Plaintiffs allege that as a prerequisite to permitting the final phase of the Greens project, the Town required SBJ Associates L.L.C. ("SBJ"), a developer that owned certain property rights for Sanctuary, to develop Sanctuary with affordable multi-unit family housing.  (Am. Compl. ¶ 7.)  Despite that requirement, when SBJ submitted a development proposal to the Town which included two and three bedroom affordable housing units, the proposal "was effectively rejected when the Town failed to even vote on the plan for more than a year.  Tellingly, however, after the proposal was revised on September 11, 2000 so that the only affordable units planned for Sanctuary were one-bedroom and studio apartments, the Town acted the very next day to recommend the housing plan's approval, passing Resolution No.2000-684." (*Id.* ¶ 9.)  Plaintiffs allege that Defendants acted in a discriminatory fashion because they knew or should have known that the multi-bedroom units would increase the minority population while the one-bedroom and studio units were far less likely to attract minorities, .  (*Id.* ¶ 11.)

Based on these allegations, and at this early stage in the litigation, the Court finds that it cannot be said that Plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief."  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Rather, given the Town's alleged history of discriminatory policies, coupled with its alleged inaction with regard to the multi-family proposal, followed by its immediate action concerning the revised proposal, which allegedly will attract less minorities, the Court finds that Plaintiffs have alleged more than a duty to provide low income housing; they have alleged that Defendants'

6

actions, policies, and procedures have prevented the development of housing most likely to attract minority families. *Cf. U.S. v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1218-19 (2d Cir. 1987) ("[T]he absence of a general obligation to construct does not give the municipality license to proceed discriminatorily once it has started down the road to construction. . . . [W]hen we held in *Acevedo* that there was no constitutional violation in the defendant's decision, made with no discriminatory intent, not to construct housing, we took care to distinguish cases in which municipalities had intentionally pursued their construction plans in a segregative manner, 'effectively restrict[ing] low income housing projects to segregated neighborhoods.'") (quoting *Acevedo*, 500 F.2d at 1081 n.3).

Finally, the Court recognizes, as Defendants maintain, that the Court recited many, if not all, of the allegations in the March 23, 2005 Order that the Court now relies on to sustain Plaintiffs' FHA claim. Nonetheless, mere recitation of these facts does not necessarily imply that the Court properly considered them in making its final determination. Indeed, upon further reflection, the Court finds that proper consideration of these facts mandates a different result and, thus, reconsideration is warranted. Moreover, reconsideration is necessary to "correct a clear error or prevent manifest injustice" as Plaintiffs' allegations do indeed state a claim under the FHA. *Virgin Atl.*, 956 F.2d at 1255. Accordingly, Plaintiffs' motion for reconsideration is granted and upon reconsideration, Defendants' motion to dismiss Plaintiffs' claims under the FHA for failure to state a claim is denied.

### B. *Equal Protection Clause*

Plaintiffs' fifth cause of action alleges that "Defendants' discriminatory practices, motivated by malice and/or callous disregard for the rights of the Plaintiffs, deprives Plaintiffs of

7

their rights under the Equal Protection Clause of the United States Constitution with regard to housing in the Town of Huntington."[1] (Am. Compl. ¶ 58.) In the March 23, 2005 Order, the Court dismissed this claim based on its finding that Plaintiffs had failed to sufficiently allege discriminatory intent. Specifically, the Court found: "Although Plaintiffs[] allege that 'Defendants' discriminatory practices [were] motivated by malice and/or callous disregard for the[ir] rights,' conclusory allegations are not sufficient to establish discriminatory intent." (Mar. 23, 2005 Order at 14.)

Plaintiffs now argue that in reaching this conclusion, the Court improperly focused on Plaintiffs' general allegations of intent as set forth under "Count Five" as opposed to looking at the pleading as a whole, which Plaintiffs claim supports a finding that Defendants intentionally discriminated. The Court agrees.

As recognized by the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977), in the absence of direct evidence of intentional discrimination, courts must look to other evidence. *Id.* at 266. Indicia of intent include "the historical background of the decision," the "specific sequence of events leading up to the challenged decision," and "[d]epartures from the normal procedural" or "substantive" practices. *Id.* Here, viewing the Town's alleged history of discrimination in conjunction with its failure to act on the multi-family proposal for over one year, followed by its immediate approval of the studio and one-bedroom proposal, knowing that the former would attract minorities and the latter would not, would permit the conclusion that Defendants were motivated with

---

[1] For purposes of discussion, the Court addresses Plaintiffs' fifth cause of action before addressing their other claims.

discriminatory animus. Accordingly, for the reasons set forth above, the Court grants reconsideration and finds that Plaintiffs have properly alleged an Equal Protection violation.

    C.    *42 U.S.C. § 1982*

Plaintiffs' second claim asserts a violation of 42 U.S.C. § 1982. In the March 23, 2005 Order, the Court dismissed this claim on the grounds that "the requirements necessary to establish a claim under Section 1982 are the same as under the [FHA]" except that "Section 1982 has an additional requirement: Plaintiff must show discriminatory intent." (Mar. 23, 2005 Order at 15.) Having determined that Plaintiffs failed to state a claim under the FHA and failed to allege discriminatory intent, the Court dismissed this claim. Upon reconsideration, and as noted above, the Court now finds that Plaintiffs have sufficiently alleged both a claim under the FHA and discriminatory intent. Accordingly, on reconsideration, Defendants' motion to dismiss Plaintiffs' Section 1982 claim is denied.

    D.    *42 U.S.C. § 1983*

Plaintiffs' third claim asserts a violation of 42 U.S.C. § 1983. As noted in the Court's March 23, 2005 Order, to set forth a claim under Section 1983, Plaintiffs must allege that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff[s] suffered a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (citation omitted). The Court held that although Plaintiffs had sufficiently alleged that Defendants were state actors, their claim failed based on the Court's finding that Plaintiffs failed to state a claim under the FHA and the Equal Protection Clause. Because the Court now finds that Plaintiffs have sufficiently alleged both a violation of the FHA as well as the Equal Protection Clause,

9

upon reconsideration, the Court finds that Plaintiffs have sufficiently alleged a claim under Section 1983.

### E. *Defendants' Remaining Arguments*

Finally, the Court notes that its decision is limited to the arguments raised by the parties on the instant motion. Should Defendants wish to proceed with any of their arguments as set forth in their initial moving papers, they should so advise the Court by letter on or before December 27, 2005.

## *CONCLUSION*

For all of the above reasons, Plaintiffs' motion for reconsideration is granted. Upon reconsideration, the Court denies Defendants' motion to dismiss Plaintiffs' first, second, third, and fifth causes of action.[2]

**SO ORDERED.**

Dated: November 29, 2005
Central Islip, New York

/s
Denis R. Hurley,
United States District Judge

---

[2] Plaintiffs' motion for reconsideration makes no argument with respect to Plaintiffs' fourth cause of action, an alleged violation of 42 U.S.C. § 2000d. Accordingly, pursuant to the March 23, 2005 Order, that claim remains dismissed.