UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FAIR HOUSING IN HUNTINGTON            :
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA         :
HAWKINS, LYNDA JOHN and IAN JOHN,        CV 02 2787 (DRH) (WHW)

                           :

                Plaintiffs,       **AMENDMENT TO**

                           :     **COMPLAINT**

   v.

                           :

TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF             :
HUNTINGTON, and TOWN OF
HUNTINGTON PLANNING BOARD             :

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## AMENDMENT TO COMPLAINT

      Plaintiffs The Fair Housing in Huntington Committee, the Huntington

Branch of the National Association for the Advancement of Colored People, Bernard

Peyton, Athena Hawkins, Lynda John and Ian John submit the attached Amended

Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Dated:  New York, New York            Respectfully submitted,
       April 8, 2004

                                       *Jeffrey Glekel*
                                Jeffrey Glekel (JG 3781)
                                Michael D. Birnbaum (MB 3645)
                                Jacob B. Radcliff (JR 3845)
                                SKADDEN, ARPS, SLATE
                                 MEAGHER & FLOM LLP
                                Attorneys for Plaintiffs
                                Four Times Square
                                New York, NY  10036
                                (212) 735-3000

Nadine Cohen * (NC 4922)
Co-counsel for Plaintiffs
LAWYERS' COMMITTEE FOR
 CIVIL RIGHTS OF THE BOSTON
 BAR ASSOCIATION
Suite 443
294 Washington Street
Boston, MA  02108

Cheryl Ziegler * (CZ 0701)
Co-counsel for Plaintiffs
LAWYERS' COMMITTEE FOR
 CIVIL RIGHTS UNDER LAW
Suite 400
1401 New York Avenue, NW
Washington, DC  20005

-and-

Dennis Courtland Hayes, Esq. *
Hannibal G. Williams II  Kemerer,
 Esq.*
Of Counsel
THE NATIONAL ASSOCIATION
 FOR THE ADVANCEMENT OF
 COLORED PEOPLE
4805 Mt. Hope Drive
Baltimore, Maryland  21215
(410) 580-5799

---

* Not currently admitted in New York; will be seeking admission *pro hac vice*.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
FAIR HOUSING IN HUNTINGTON            :
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA         :
HAWKINS, LYNDA JOHN and IAN JOHN,          CV 02 2787 (DRH) (WHW)
                                      :
              Plaintiffs,             :      **AMENDED COMPLAINT**
                                             **FOR DECLARATORY**
      v.                              :      **JUDGMENT, INJUNCTIVE**
                                             **RELIEF, AND DAMAGES**
                                      :
TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF             :
HUNTINGTON, and TOWN OF
HUNTINGTON PLANNING BOARD             :

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**AMENDED COMPLAINT**

**I.    NATURE OF ACTION**

1.  This is a housing discrimination action for declaratory judgment,

injunctive relief, and damages for ongoing exclusionary housing practices on the

basis of race, national origin and familial status by the Town of Huntington, Long

Island ("the Town" or "Huntington") and others on behalf of the Town.  This action

specifically challenges the exclusion of African-American, other black, Hispanic and

other racial and ethnic minority families ("Minority Families") from the land known

as "Sanctuary" at Ruland Road and the Greens at Half Hollow (the "Greens").  The

action arises under the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*; the

Civil Rights Act of 1866, 42 U.S.C. §§ 1982 and 1983; the Civil Rights Act of 1964,

42 U.S.C. § 2000d, *et seq.*; and the Equal Protection clause of the Fourteenth

Amendment to the United States Constitution.

## II.   INTRODUCTION

2.   This action brings before this Court the Town of Huntington for its

incessant rejection and obstruction of repeated efforts to create affordable family

housing in Huntington's overwhelmingly white neighborhoods (the "White Areas").

3.   Huntington has an extended and well documented history of concen-

trating Minority Families in the least desirable areas of Huntington in violation of the

Fair Housing Act.  In 1988, the Second Circuit Court of Appeals found that the

Town was in violation of the Fair Housing Act and directed the United States

District Court for the Eastern District of New York to compel the Town to amend its

zoning laws to allow a nonprofit housing development to be built in a White Area.

See Huntington Branch, NAACP v. Huntington, 844 F.2d 926 (2d Cir.), aff'd per

curiam, 488 U.S. 15 (1988) ("Huntington").  The Town had refused to allow

multi-family housing to be built in the White Areas.  Instead, affordable multi-family

housing had been concentrated in the disproportionately minority, low-income areas

around Huntington's railroad station (the "Racially Impacted Areas").

2

4.   Since <u>Huntington</u> ordered the Town to amend its zoning laws, the Town Board and Planning Board have found myriad new ways to engage in the same discriminatory housing practices that were formerly effected through its zoning laws.

5.   In 2000, after repeatedly acknowledging the Town's affordable family housing shortages, the Town amended the zoning laws for the largest parcel of land available for residential development in the White Areas – the 382-acre Greens – to allow the construction of approximately 1,375 new homes, <u>not one of which was an affordable family housing unit</u>.

6.   The Town's decision to create and approve a development plan for the Greens that lacks any affordable housing further excludes Minority Families from the White Areas, not only perpetuating the housing segregation that currently persists along racial lines, but also exacerbating the problems Minority Families face in obtaining homes in the White Areas.

7.   The Court of Appeals for the Second Circuit has recognized that "[a]s a condition to the change of zoning [for the Greens], and as a prerequisite to permitting of the final phase of The Greens project, [developer] SBJ must develop another site it owns within the Town – referred to by the parties as the Ruland Rd. site – <u>with affordable, multi-unit family housing</u>." <u>FHHC v. Town of Huntington</u>, No. 02-7817, at *23-24 (2d Cir. January 17, 2003).

3

8.   However, upon information and belief, the Town is now on the verge of granting permits for the construction of approximately 120 one-bedroom and studio apartments at Ruland Road, also known as "Sanctuary," none of which will provide the "affordable, multi-unit family housing" needed for Huntington's Minority Families.

9.   On or before July 1999, SBJ Associates L.L.C. ("SBJ"), a developer that owned certain property rights for Sanctuary, submitted a development proposal to the Town which included two- and three-bedroom affordable housing units.  That proposal, which would have provided the kind of housing likely to attract Minority Families to the White Areas, was effectively rejected when the Town failed to even vote on the plan for more than a year.  Tellingly, however, after the proposal was revised on September 11, 2000 so that the only affordable units planned for Sanctuary were one-bedroom and studio apartments, the Town acted the very next day to recommend the housing plan's approval, passing Resolution No. 2000-684.

10. The Town's recommendation that the one-bedroom and studio apartment plan be approved came on the same day – and, indeed, in the same resolution 2000-684 – that the Town approved a separate development plan at the Greens in the White Areas that included approximately 72 market value family residences along with hundreds of affordable age-restricted units.

4

11. The Town delayed approval of the application for multi-bedroom units at the Ruland Road site when they knew or should have known that such units would increase the minority population who eventually will live there, yet the Town hastened to approve a one-bedroom and studio plan, knowing that these units were far less likely to attract minority applicants. This is intentional discrimination.

12. Using two available properties in the White Areas to develop approximately 1,500 new homes without building one home available to low-income families undoubtedly will have a disparate impact on Minority Families by severely exacerbating the affordable family housing crisis in the Town and excluding those families from the White Areas.

13. Plaintiffs seek declaratory and injunctive relief preventing further construction of Sanctuary until the zoning and plan for the site are revised to include multi-bedroom units more likely to attract Minority Families.

### III.    JURISDICTION

14. Jurisdiction is conferred on this Court by 42 U.S.C. § 3613 and by 28 U.S.C. §§ 1343 and 2201.

### IV.    PARTIES

15. Plaintiff, the NAACP Huntington Branch, with its principal place of business in Huntington, New York, is a membership based, non-profit association,

whose parent body was organized under the laws of the State of New York in 1911. The NAACP Huntington Branch (the "Huntington Branch") is affiliated and charted by the National Association for the Advancement of Colored People, Inc. ("NAACP"). Like its parent organization, the Huntington Branch was established with the objective of ensuring the political, housing, educational, social and economic equality of minority groups. Members of the Huntington Branch live in and around Huntington, New York and desire more affordable family housing and the increased integration attendant thereto. The unlawful discriminatory actions of the Defendants have injured the Huntington Branch of the NAACP by: (a) interfering with efforts and programs of the Huntington Branch intended to bring about equality of minority groups and the elimination of race discrimination; (b) requiring the Huntington Branch to commit scarce finite resources, including substantial staff time, to counsel complainants, investigate complaints through extensive monitoring, and otherwise investigate and counteract the Defendants' discriminatory acts; and (c) frustrating the Huntington Branch's mission and purpose of promoting integration and equality of opportunity in housing and all other aspects of people's social and economic lives. Defendants' actions have required, and will require the Huntington Branch in the future to spend additional resources to counteract Defendants' discriminatory conduct with all of its adverse effects.

6

16. Defendants' discrimination, with its attendant disparate impact, upon African American families and other minorities, as described above, has injured NAACP members, including members of the Huntington Branch who have sought affordable housing in Huntington. Defendants have denied African-Americans, other minorities and progressive whites the right to live and work in an integrated family-friendly community. Defendants' conduct also encourages similar conduct by other governmental and non-governmental entities, thereby amplifying the harm of the discrimination.

17. Plaintiff Fair Housing in Huntington Committee, Inc. ("FHHC"), is a local nonprofit organization consisting of concerned residents of Huntington and the surrounding areas, located at Post Office Box 20221, Huntington Station, New York 11747 (together with the Individual Plaintiffs, "Plaintiffs"). FHHC's goals include the elimination of unlawful racially discriminatory housing practices and housing segregation that cause injury to its members, to all persons who seek to rent or buy housing units in Huntington, and to all persons who reside in Huntington. FHHC has been injured because the Town's racially discriminatory housing practices deprive its members of the opportunity to live in an integrated community and require the FHHC to expend its resources seeking redress for the Defendants' illegal conduct.

18. Plaintiff Bernard "Bud" Peyton resides in Melville, New York, which is a part of Huntington. As a White resident of Huntington, Mr. Peyton desires to live

7

in an integrated community, and has been denied that opportunity by the discriminatory practices of the Town and its agents.

19. Plaintiff Athena Hawkins resides in Huntington Station, New York, with her 10 year-old son. She seeks affordable, multi-bedroom housing in an integrated community and has been denied that opportunity by the discriminatory practices of the Town and its agents.

20. Plaintiff Lynda John resides in Huntington, New York with her husband and co-plaintiff Ian John and his 13 year-old son. She seeks affordable, multi-bedroom housing in an integrated community and has been denied that opportunity by the discriminatory practices of the Town and its agents.

21. Plaintiff Ian John resides in Huntington, New York with his wife and co-plaintiff Lynda John and his 13 year-old son. He seeks affordable, multi-bedroom housing in an integrated community and has been denied that opportunity by the discriminatory practices of the Town and its agents.

22. Plaintiffs Hawkins, Peyton, Lynda John and Ian John, collectively, shall be referred to herein as the "Individual Plaintiffs" (with Huntington Branch and FHHC, the "Plaintiffs").

23. Defendants' conduct has deprived the Individual Plaintiffs of their constitutionally and statutorily protected right to live in an integrated community.

8

Plaintiffs Hawkins, Lynda John and Ian John, for example, by virtue of the Town's discriminatory policies and actions, have suffered in that they have been forced by the lack of affordable family housing in integrated areas of Huntington to live in the Town's Racially Impacted Areas.

24. Defendant Town of Huntington, New York, is a municipal corporation organized under the laws of the State of New York. All references to the Town include any individual or entity acting on behalf of, or under the authority derived from, the Town.

25. Defendant Town Board of the Town of Huntington ("Town Board") is an elected governing body in the Town of Huntington from which the Town offices responsible for all development in Huntington derive their authority. All references to the Town Board include any individual or entity acting on behalf of, or under authority derived from, the Town Board.

26. Defendant Planning Board of the Town of Huntington (the "Planning Board") is a quasi-independent board whose members are appointed by the Huntington Town Board. All references to the Planning Board include any individual or entity acting on behalf of, or under authority derived from, the Planning Board. The Town, the Town Board, and the Planning Board, collectively, shall be referred to herein as the "Defendants."

9

## V.   SUBSTANTIVE ALLEGATIONS

**Huntington's History of Unlawful Discriminatory Housing Practices Has Resulted in Widespread Housing Segregation.**

27. The Town's long history of preventing minorities from moving into the White Areas was judicially recognized by the Second Circuit in <u>Huntington</u>.

28. The Second Circuit found that Huntington had a shortage of affordable rental housing for low and moderate-income households and that a disproportionate number of African-Americans in Huntington, as compared to white residents, need low-cost housing.  As a result, <u>Huntington</u> concluded that the Town's housing practices disproportionately harmed African-Americans, and "significantly perpetuated segregation in the Town." <u>Huntington</u>, 844 F.2d at 938.

29. The Second Circuit explained that "the Town has demonstrated little good faith in assisting the development of low-income housing." <u>Id.</u> at 941.  Moreover, the court emphasized that the Town's conduct "clearly demonstrates a pattern of stalling efforts to build low-income housing." <u>Id.</u> at 942.

**Huntington's Affordable Family Housing Shortage Continues to Disproportionately Affect Minorities.**

30. The current concentration of minorities in the Racially Impacted Areas is nearly identical to the demographics on which the <u>Huntington</u> court based its conclusion that minorities are disproportionately impacted by Huntington's lack of affordable family housing.

10

31. As the minority population in Huntington has increased, it has remained highly concentrated in a small number of census tracts in the Town of Huntington. Seven tracts combined housed 57.4% of the minority population in 1980, 59.6% of the minority population in 1990, and 59.2% of the minority population in 2000.

32. Of 48 census tracts in the Town in 1980, 34 contained black populations of less than 2%.  Of 47 census tracts in the Town in 2000, 30 contained black populations of less than 2%.

33. In 2000 there were 7 census tracts (out of 47 census tracts in the Town) where blacks constituted 9% or more of the residents, ranging from 9.4% to 26.1%. Blacks and Hispanics together constituted 15.7% to 57.2% of the residents in these same tracts.

34. A study conducted in 2000 concluded that in Huntington, where less than one in nine residents is African-American or Hispanic, the need for affordable housing falls four times as heavily on African-Americans and Hispanics than on Whites.

**Huntington Has Failed to Respond to HUD's Criticism of the Town's Failure to Comply with Its Fair Housing Mandates.**

35. The Town has for many years refused to comply with fair housing mandates from the U.S. Department of Housing and Urban Development ("HUD").

11

36. In 1997, a review by HUD found that the Town's actions with respect to fair housing were inadequate to the point that sanctions and/or corrective actions were authorized.  HUD specifically found that "the Town did not address the problem of the lack of multifamily housing for low and moderate income persons outside of the racially-impacted urban renewal area and the lack of homeownerships [sic] opportunities outside the racially-impacted urban renewal area at prices affordable for low and moderate income persons."  In 1998, HUD reiterated its "significant concerns" regarding fair housing in Huntington.

37. In 1999, HUD *again* criticized the Town for its inaction in a letter notifying the Town that it had referred a fair housing complaint to the Department of Justice.

## VI.   THE GREENS AND SANCTUARY WILL EXACERBATE SEGREGATED HOUSING IN HUNTINGTON

**The Town's Participation in the Sanctuary Development Plan.**

38. The power to grant "density bonuses" -- allowances for more homes per acre than existing zoning would ordinarily allow – gives the Town Board and the Planning Board considerable power to dictate what groups of residents a developer will serve.

39. The Town's 2000 - 2004 Consolidated Plan provides that in exchange for density bonuses, the Town expects property owners to develop some percentage of their property as affordable housing.

40. In or around July 19, 1999, SBJ requested a density bonus for the Greens. This density bonus effectively changed the zoning for the Greens to allow an approximately 1,375 unit development plan that, upon information and belief, the Town cooperated with SBJ to create. Without a density bonus, the zoning for the Greens would have permitted only approximately 125 housing units.

41. The Greens would include – and in fact does include – a combination of market rate units and affordable but age-restricted housing, but does not include a single unit of affordable non-age-restricted housing, the housing most likely to attract Minority Families.

42. The original Greens proposal submitted in July of 1999 included a development plan for Sanctuary comprising two- and three-bedroom homes that would at least partially ameliorate the discriminatory impact that the Greens development would have on Minority Families. Upon information and belief, no hearings or formal proceedings were ever conducted in connection with SBJ's application.

43. Approximately 14 months later, however, on September 11, 2000, the Town received a new plan for Sanctuary calling for one-bedroom and studio units. Unlike the forementioned two- and three-bedroom plan, this plan would do nothing to ameliorate the disparate impact the Greens would have on Minority Families but rather would have the opposite effect, further exacerbating the disparate impact the Town's housing plans have on Minority Families.  Nevertheless, the very next day, in connection with the Town's granting of a density bonus for the Greens property, the Town noted its approval of the new one-bedroom and studio plan.

44. The Second Circuit recognized in <u>FHHC v. Town of Huntington</u> that the Town was to require SBJ, the benefactor of the density bonus, to develop "affordable, multi-unit family housing" at Sanctuary.  Moreover, the Second Circuit acknowledged that evidence offered by Plaintiffs as to the discriminatory impact of developing only one-bedroom and studio apartments at Sanctuary "calls into question the effectiveness" of the Sancturary proposal as a means for satisfying the Town's responsibilities.

45. The Town required, in its September 12, 2000 resolution approving the Greens project, "that no building permits shall be issued for 200 of the market value condominium units at The Greens Project until such time as building permits are issued for all of the units at the Sanctuary Project at Ruland Road. . . "  But upon information and belief no permits have been issued for any affordable housing of any

14

kind at Sanctuary, while permits for the 200 market rate units at the Greens have already been approved.

46. The Town has offered no public explanation for its decision to disregard its own September 12, 2000 resolution or for its fast-tracking the permit process for market rate units at the Greens compared to the excruciatingly slow track reserved for affordable housing projects in the White Areas.

47. The Town's implicit rejection of SBJ's intial proposal, which was likely to attract at least some low-income Minority Families, and the Town's subsequent approval of a plan for the Greens and Sanctuary that will attract no low-income Minority Families amounts to intentional discrimination and will have a disparate impact on poor Minority Families seeking affordable family housing in Huntington.

48. Plaintiffs bring this action to, inter alia, enjoin the Town from granting any permits for construction at Sanctuary, such as the proposal presently under consideration by the Town, that will discriminate against Minority Families.

### COUNT ONE (Violation of the Fair Housing Act) 42 U.S.C. § 3601 *et seq.*

49. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

15

50. The Defendants' discriminatory practices, motivated by malice and/or callous disregard for the rights of the Plaintiffs, deprive the Plaintiffs of their right of equal access to housing and otherwise make unavailable housing in the Town of Huntington on the basis of race, national origin and familial status in violation of the Fair Housing Act, 42 U.S.C. §3604(a).

### COUNT TWO: (Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.)

51. Plaintiffs repeat and reallege paragraphs 1 through 48, as if fully set forth herein.

52. The Defendants' discriminatory practices, motivated by malice and/or callous disregard for the rights of the Plaintiffs, deprive the Plaintiffs of their right to purchase, lease, or otherwise hold or convey property in the Town of Huntington on the basis of race and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C. §1982.

### COUNT THREE: (Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.)

53. Plaintiffs repeat and reallege paragraphs 1 through 48, as if fully set forth herein.

54. The Defendants' discriminatory practices, motivated by malice and/or callous disregard for the rights of the Plaintiffs, deprive the Plaintiffs of their right of

16

equal access to housing in the Town of Huntington under color of law in violation of the Federal Civil Rights Act of 1871. 42 U.S.C. §1983.

## COUNT FOUR: (Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*)

55. Plaintiffs repeat and reallege paragraphs 1 through 48, as if fully set forth herein.

56. The Defendants' discriminatory practices with regard to the administration of federal programs, motivated by malice and/or callous disregard for the rights of the Plaintiffs, violate the Civil Rights Act of 1964, 42 U.S.C. §2000d *et seq.*

## COUNT FIVE: (Violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.)

57. Plaintiffs repeat and reallege paragraphs 1 through 48, as if fully set forth herein.

58. The Defendants' discriminatory practices, motivated by malice and/or callous disregard for the rights of the Plaintiffs, deprives the Plaintiffs of their rights under the Equal Protection Clause of the United States Constitution with regard to housing in the Town of Huntington.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully demand that this Court enter a judgment:

17

(a)     Declaring that Defendants' acts, practices, and policies complained of herein violated and violate plaintiffs' rights as secured by Fair Housing Act, as amended, 42 U.S.C. §3601 *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. §§1982; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Civil Rights Act of 1964, 42 U.S.C. §2000d *et seq.*; and the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution;

(b)     Enjoining the Defendants, their agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from engaging in any policies or practices that deprive Plaintiffs of their rights secured by any and all of the statutes cited in sub-paragraph (a), above, including, but not limited to:

(i)     Enjoining Defendants from granting, and ordering Defendants to withdraw, any permits, letters of approval, or other consents allowing steps toward construction of Sanctuary development as currently proposed to continue;

(ii)    Enjoining Defedants from granting, and ordering Defendants to withdraw, any permits, letters of approval, or other consents allowing further construction or occupation of the Greens;

18

(iii)   Compelling Defendants to approve an affordable housing plan for the Greens comprising units with two or more bedrooms that are suitable for families with children;

(iv)   Enjoining Defendants from permitting any construction at Sanctuary under the current plan; and

(v)   Enjoining Defendants and their agents, employees, successors and assigns, from engaging in any other discriminatory acts that perpetuate or contribute to segregation in the Town of Huntington; and

(vi)   Ordering Defendants to take affirmative steps, supervised by this Court, to overcome the effects of past discriminatory practices;

(c)   Awarding compensatory damages resulting from Defendants' discriminatory conduct in an amount to be proven at trial;

(d)   Awarding punitive damages to Plaintiffs;

19

(e)     Awarding to the Fair Housing in Huntington Committee

and Individual Plaintiffs their expenses incurred in obtaining legal redress for the

Defendants' practices and in pursuing this litigation;

(f)     Awarding the Plaintiffs their costs and attorneys' fees in

this action; and

(g)     For such other and further relief as this Court deems just

and proper.

Dated:  New York, New York
          April 8, 2004

Respectfully submitted,

_Jeffrey Glekel_

Jeffrey Glekel (JG 3781)
Michael D. Birnbaum (MB 3645)
Jacob B. Radcliff (JR 3845)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Attorneys for Plaintiffs
Four Times Square
New York, NY  10036
(212) 735-3000


Nadine Cohen * (NC 4922)
Co-counsel for Plaintiffs
LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS OF THE BOSTON
  BAR ASSOCIATION
Suite 443
294 Washington Street
Boston, MA  02108

20

Cheryl Ziegler * (CZ 0701)
Co-counsel for Plaintiffs
LAWYERS' COMMITTEE FOR
 CIVIL RIGHTS UNDER LAW
Suite 400
1401 New York Avenue, NW
Washington, DC  20005

-and-

Dennis Courtland Hayes, Esq. *
Hannibal G. Williams II
 Kemerer, Esq.*
Of Counsel
THE NATIONAL
 ASSOCIATION FOR THE
 ADVANCEMENT OF
 COLORED PEOPLE
4805 Mt. Hope Drive
Baltimore, Maryland  21215
(410) 580-5799
Washington, DC  20005

---

* Not currently admitted in New York; will be seeking admission *pro hac vice*.

21

## CERTIFICATE OF SERVICE

The undersigned, a member of the Bar of this Court, hereby certifies that he has caused to be served a copy of the Amended Complaint by certified mail and facsimile on the 8th day of April, 2004 on the following:

John Harras
Morton Weber and Associates
201 North Service Road, Suite 300
Melville, New York 11747

James Ryan
Cullen and Dykman
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

Daniel F. De Vita
Attorney at Law
377 Oak Street
Garden City, New York 11530

Dated: New York, New York
April 8, 2004

Michael D. Birnbaum