Jeffrey Glekel (JG 3781)
Michael D. Birnbaum (MB 3645)
Gary J. Hacker (GH 7883)
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036
(212) 735-3000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
FAIR HOUSING IN HUNTINGTON          :
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA       :
HAWKINS, LYNDA JOHN and IAN JOHN,        CV 02 2787 (DRH) (WDW)
                                    :
                  Plaintiffs,
                                    :
        v.
                                    :
TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF           :
HUNTINGTON, TOWN OF
HUNTINGTON PLANNING BOARD,          :

                  Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION UNDER RULE 12(b)(7) AND 12(c)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  ARGUMENT ................................................................................................ 4

    A.  STANDARD FOR A MOTION TO DISMISS. ................................ 4

    B.  PLAINTIFFS' COMPLAINT IS TIMELY ...................................... 5

        1.  Plaintiffs Filed this Action Within the Applicable
            Limitations Periods. .................................................................. 5

        2.  Plaintiffs' Amended Complaint Relates Back to Initial
            Complaint. ................................................................................ 6

        3.  Defendants Fail to Establish Laches As a Matter of Law. ........... 9

        4.  Claims Pursued by Additional Plaintiffs in the Amended
            Complaint Are Not Barred. ....................................................... 10

    C.  DEFENDANTS HAVE FAILED TO ESTABLISH THE
       ABSENCE OF INDISPENSABLE PARTIES. ................................ 11

        1.  S.B.J. Associates, LLC Is Not a Necessary Party. ................... 13

        2.  Ruland Road LLC is Not a Necessary Party. ............................ 13

        3.  The Contract Vendees Are Not Necessary Parties. ................... 14

        4.  A Finding that any Absent Party Was Necessary Would
            Not Warrant Dismissal. ............................................................ 16

III.  CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

In re Am. Express Co. Sec. Litig., No. 02 Civ. 5533 (WHP),
2004 WL. 632750 (S.D.N.Y. Mar. 31, 2004) ...............................................................11

Andujar v. Rogowski, 113 F.R.D. 151 (S.D.N.Y. 1986) ......................................................11

Associated Dry Goods Corp. v. Towers Finance Corp., 920 F.2d 1121
(2d Cir. 1990)......................................................................................................................16

Bodner v. Banque Paribas, 114 F. Supp. 2d 117 (E.D.N.Y. 2000)......................................13

Burnette v. Carothers, 192 F.3d 52 (2d Cir. 1999) ...............................................................4

Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994) ...............................................................8

Eastern Paralyzed Veterans Association v. Lazarus-Burman Associates,
133 F. Supp. 2d 203 (E.D.N.Y. 2001) .............................................................................7

Fair Housing in Huntington Committee v. Town of Huntington,
No. 02-CV-2787 (DRH) ...............................................................................................1,2

Fair Housing in Huntington Committee v. Town of Huntington,
316 F.3d 357 (2d Cir. 2003)..........................................................................................7

Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir. 2001) .......................................................8

Fonte v. Board of Managers of Cont'l Towers Condo., 848 F.2d 24
(2d Cir. 1988).................................................................................................................4

Giaguaro S.p.A. v. Amiglio, 257 F. Supp. 2d 529 (E.D.N.Y. 2003) ..................................14

H.J. Inc. v. Northwestern Bell Telegraph Co., 492 U.S. 229 (1989)....................................4

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) .....................................................8

Health-Chemical Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990)..........................................13

Ivani Contracting Corp. v. City of N.Y., 103 F.3d 257, Living Media India
Ltd. v. Parekh, No. 92 ...................................................................................................9

Johnson v. Smithsonian Institution, 189 F.3d 180 (2d Cir. 1999) ...............................14, 15

Jota v. Texaco Inc., 157 F.3d 153 (2d Cir. 1998) ...............................................................16

Kim v. Dial Service International, Inc., No. 96 Civ. 3327 (DLC),
    1997 WL 5902 (S.D.N.Y. Jan. 8, 1997) ..................................................................6

Kingsford v. Maryland National Bank, No. 91 Civ. 6963 (LMM),
    1992 WL 309784 (S.D.N.Y. Oct. 9, 1992) ...............................................................11

Kopec v. Coughlin, 922 F.2d 152 (2d Cir. 1991) ...............................................................4

Living Media India Ltd. v. Parekh, No. 92 Civ. 8079 (TPG),
    1994 WL 68193 (S.D.N.Y. Feb. 28, 1994).............................................................9

Manning v. Energy Conversion Devices, Inc., 13 F.3d 606 (2d Cir. 1994) ......................13

NAACP v. Town of Huntington, 689 F.2d 391 (2d Cir. 1982) ...........................................8

N. Triphammer Development Corp. v. Ithaca Associates,
    704 F. Supp. 422 (S.D.N.Y. 1989) ...............................................................10

Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030
    (9th Cir. 1983)...............................................................................12

On-Line Technologies v. Perkin Elmer Corp., 141 F. Supp. 2d 246................................17

Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41 (2d Cir. 1996) ...........................................12

Ragin v. Harry Macklowe Real Estate Co., 801 F. Supp. 1213 (S.D.N.Y.
    1992), aff'd in part, rev'd in part on other grounds, 6 F.3d 898
    (2d Cir. 1993)...........................................................................................8

Savoia Film S.A.I. v. Vanguard Films, Inc., 10 F.R.D. 64 (S.D.N.Y. 1950) ...................15

Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group
    Ltd., 181 F.3d 410 (3d Cir. 1999) ...............................................................4

Steubing v. Brinegar, 511 F.2d 489 (2d Cir. 1975) ..........................................................10

Stevelman v. Alias Research, Inc., 174 F.3d 79 (2d Cir. 1999) ...................................6, 11

Student Public Interest Research Group of N.J., Inc. v. P.D. Oil &
    Chemical Storage, Inc., 627 F. Supp. 1074 (D.N.J. 1986) ..........................................10

Transportation Workers Union of America, Local 100, AFL-CIO v. N.Y.
    City Transit Authority, 341 F. Supp. 2d 432 (S.D.N.Y. 2004)....................................9

United States v. Mack, 295 U.S. 480 (1935) ...................................................................9

United States v. Yonkers Board of Education, 30 F. Supp. 2d 650
(S.D.N.Y 1998) ...........................................................................8

Viacom International, Inc. v. Kearney, 212 F.3d 721 (2d Cir. 2000).................................17

Warth v. Seldin, 422 U.S. 490 (1975)...........................................................................4

## STATUTES

42 U.S.C. §§ 1982, 1983 and 2000d ...........................................................................5

42 U.S.C. § 3613(a)(1)(A) ...........................................................................5

Fed. R. Civ. P. 15(c) ...........................................................................6, 11

Fed. R. Civ. P. 19 ...........................................................................16

Fed. R. Civ. P. 19(a) ...........................................................................12

Fed. R. Civ. P. 19(b) ...........................................................................17

Fed. R. Civ. P. 21 ...........................................................................11

## MISCELLANEOUS

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal
Practice and Procedure* §§ 1604, 1609 (2d ed. 1986)...........................................12, 16

Plaintiffs Fair Housing in Huntington Committee ("FHHC"), Huntington Branch, NAACP, Bernard Peyton, Athena Hawkins, Lynda John and Ian John (collectively, "Plaintiffs") submit this memorandum of law in opposition to the Rule 12(b)(7) and 12(c) motion of the Town of Huntington ("Huntington" or the "Town"), the Town Board, and Town Planning Board (collectively, "Defendants").

## I.   **PRELIMINARY STATEMENT**

Pending before the Court is Plaintiffs' Amended Complaint ("Amended Complaint") seeking relief from the latest manifestation of the discriminatory policies and practices that have established, maintained, and perpetuated racial segregation in Huntington for decades.  For purposes of this response to Defendants' Motion to Dismiss, Plaintiffs will not describe the Town's long and sordid history of discrimination in detail, as this Court has already acknowledged that "the Amended Complaint does state a claim under the [Fair Housing Act]."  *Fair Hous. in Huntington Comm. v. Town of Huntington*, No. 02-CV-2787 (DRH) (WDW), 2005 WL 3184273, at *3 (E.D.N.Y. Nov. 29, 2005) (the "November 29, 2005 Decision").  This memorandum of law will instead discuss only the Town's more creative, though no more persuasive, purported grounds for dismissal set forth in Defendants' March 22, 2006 Motion to Dismiss and accompanying 24-page memorandum of law.[1]

Defendants' arguments can be summarized as follows:  (i) Plaintiffs should have sued earlier, (ii) Plaintiffs should have sued someone else, and (iii) Plaintiffs should not be permitted to pursue claims in their Amended Complaint not explicitly set forth in

---

[1] Notwithstanding the Town's failure to limit its brief to 20 pages, as required by this Court's Local Rule 2.C., Plaintiffs' Response will respond to the Town's Motion in its entirety.

detail in Plaintiffs' initial Complaint ("Initial Complaint").  All three of these arguments should fail.

*First*, Plaintiffs have sued within the time permitted by the applicable statutes of limitations.  The statutory limitations periods for Plaintiffs' Fair Housing Act and civil rights claims are two- and three-years, respectively.  As this Court's November 29, 2005 Decision reflects, Plaintiffs' claims are based upon, *inter alia*, Town actions that occurred in September 2000 – less than two years prior to the filing of Plaintiffs' Initial Complaint in May 2002.  *See* November 29, 2005 Decision, 2005 WL 3184273, at *3.  The Town nevertheless argues that Plaintiffs' claims are time-barred, first contending that some earlier discriminatory activity (either by the Town or by non-parties) should have started the limitations clock in this case, then asserting that notwithstanding Plaintiffs' decision to sue under the Fair Housing Act and certain civil rights laws, the Court should rely upon some shorter limitations periods applicable for certain claims that Plaintiffs have not chosen to pursue here.  As discussed below, neither approach has any merit.

*Second*, Defendants may not escape liability for its discrimination by pointing to various non-parties the Town claims, albeit incorrectly, are indispensable to this litigation.  While it is clear that many, if not all, of the purportedly "necessary and indispensable" parties whose interests the Town purportedly seeks to protect are aware of this litigation – indeed, the Greens and Ruland Road developers have been involved in the instant litigation in different capacities – no non-party has moved the Court to join this lawsuit.  These non-parties are clearly in a better position to determine whether and how their interests may be impacted by this litigation, which is why the Second Circuit, as set forth below, has stated that it "is the absent party that must 'claim an interest'"

under Rule 19.  *See infra* Section C.  Moreover, even if the Town was the appropriate party to move on the developers' and Greens residents' behalves, Defendants' speculative assertions as to how hypothetical relief *might* implicate non-parties' interests fails to satisfy the strict standard for dismissal under Rule 19.  Where, as here, relief that does not negatively impact non-parties is readily available, the non-parties are by definition not "indispensable" to a just adjudication of Plaintiffs' claims.

_Third_, and finally, only by selectively ignoring certain parts of both Plaintiffs' Initial and Amended Complaints, as well as disregarding Defendants' own prior statements and the Court of Appeals for the Second Circuit's description of Plaintiffs' Initial Complaint, can the Town contend that the claims Plaintiffs pursue through their Amended Complaint do not relate sufficiently to the subject matter underlying Plaintiffs' first submission.  Both Complaints challenge Defendants' continuing discriminatory exclusion of large minority families from Huntington's predominantly white communities (the "White Areas") and focus, *inter alia*, on the decisions relating to the Greens and Ruland Road.  The Town seeks to distinguish the Complaints by claiming that "there was simply no indication from the original complaint whatsoever that the events surrounding Ruland Road would be the subject of claims in this litigation." (Defs. Br. at 22.)  In light of the Town's earlier assertion (in response to the Initial Complaint) that Ruland Road would play an "integral role in the outcome of this action," this claim is disingenuous at best, and unquestionably inaccurate.  (Defs. Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj., filed June 12, 2002.)

## II.    ARGUMENT

### A.    STANDARD FOR A MOTION TO DISMISS.

It is well-established that on a motion to dismiss, all allegations of the complaint must be taken as true. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Moreover, a court must consider all well-pleaded facts in the light most favorable to the plaintiff, and may dismiss a case only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989) (citation omitted). These principles are equally applicable to a motion for judgment on the pleadings brought pursuant to Rule 12(c). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.").[2]

---

[2] Defendants repeatedly refer to documents in the record that are not appropriately considered on a motion to dismiss. (*See, e.g.,* June 11, 2002 Aff. of R. Machtay and June 11, 2002 Aff. of J. Ryan Exs. D and E, respectively, to Mar. 22, 2006 Aff. of J. Ryan.) Courts routinely refuse to consider motions to dismiss where, as here, defendants have presented evidence and arguments going to the merits of plaintiffs' claims. *See, e.g., Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991) (reversing grant of motion to dismiss for failure to provide plaintiff notice and opportunity to oppose what was essentially a motion for summary judgment); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 26 (2d Cir. 1988) (vacating dismissal where defendant's motion should have been brought as a motion for summary judgment). In anticipation of Plaintiffs' objection, Defendants erroneously rely on *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410 (3d Cir. 1999). *Southern Cross* holds only that a court "may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion." *Id.* at 426.

4

**B.    PLAINTIFFS' COMPLAINT IS TIMELY**

**1.    Plaintiffs Filed this Action Within the Applicable Limitations Periods.**

Plaintiffs' claims under the Fair Housing Act are governed by the two-year limitations period in 42 U.S.C. § 3613(a)(1)(A).  Plaintiffs' civil rights claims are governed by the three-year limitations period in 42 U.S.C. §§ 1982, 1983, and 2000d. These limitations periods are fatal to the Town's statute of limitations argument.

Plaintiffs filed this action in May 2002 in response to the Town's discriminatory action regarding housing policies which began, insofar as they relate to the Greens and Ruland Road, with a re-zoning order issued July 2000 in favor of the development of the Greens.  According to the Town, "the Ruland Road rezoning was enacted . . . on November 21, 2000" (Defs. Br. at 15), which of course means that a complaint filed in May 2002 concerning the Town's discriminatory conduct involving, *inter alia*, the aforementioned Greens and Ruland Road decisions cannot be time-barred based on a two- or three-year statute of limitations.

Defendants are not deterred, however, by the calendar of relevant events in this case.  Defendants apparently hope to establish an earlier date upon which limitations were triggered, referring to events that took place long before the Town's discriminatory actions in late 2000 and ignoring the discrimination that continues to this day.  The Town points to, *inter alia*, a "Task Force report" concerning the Greens issued in 1995 by the Long Island Development Corporation ("LIDC"); non-party [SBJ Associate's] purchase of "the LIDC property" and subsequent application to the Town for a zoning change; and the Town's "consider[ation] [of] the subdivision of the property." (Defs. Br. at 12-13.) Defendants fail to explain, however, how the Town's mere deliberations somehow started the limitations clock for challenges to *subsequent* Town zoning decisions.  Moreover,

Defendants can offer no legal support for their suggestion that preliminary activity by a developer would trigger the limitations period in this action against the Town for its discriminatory action.

### 2. Plaintiffs' Amended Complaint Relates Back to Initial Complaint.

Plaintiffs' Amended Complaint is likewise timely because the claims set forth therein arise out of the same conduct complained of in the Initial Complaint. For purposes of a statute of limitations analysis, Plaintiffs' Amended Complaint relates back to their initial timely complaint. *See* Fed. R. Civ. P. 15(c); *see also Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) ("the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading'") (citations omitted); *Kim v. Dial Serv. Int'l, Inc.*, No. 96 Civ. 3327 (DLC), 1997 WL 5902, at *13 (S.D.N.Y. Jan. 8, 1997) (same). Plaintiffs' Initial Complaint challenging the Defendants' discriminatory housing practices unquestionably gave Defendants fair notice of Plaintiffs' claims regarding both the Greens and Ruland Road.[3]

---

[3] The Initial Complaint repeatedly describes the gravamen of Plaintiffs' complaint as a refusal of the Town to permit or allow the development of any significant number of affordable housing opportunities for minority families outside of racially concentrated areas of Huntington. *See* Initial Complaint ¶ 3 (describing Town refusal to allow multi-family housing to be built in White areas); ¶ 31 (noting Town's refusal to permit affordable multi-family housing to be built outside Racially Impacted Areas); ¶¶ 32-33 (noting HUD objections to Town's policy of preventing such affordable housing); ¶¶ 34-35 (noting Town policy that still avoided creation of affordable family housing in White areas). The Town's refusal to permit such housing at The Greens is an instance of this ongoing policy, *see id.* ¶¶ 41-56, which was continued as the Town – in conjunction with its rezoning of The Greens – initially purported to allow such affordable family housing opportunities at Ruland Road while in reality refusing to permit any such true opportunities by restricting the type and size of units.

The Town remarkably now contends that "[i]t is undisputed that none of the plaintiffs took any action regarding Ruland Road until the filing of the Amended Complaint." (Defs. Br. at 15.)  This is simply not the case.  Indeed, **Defendants** informed this Court in their Memorandum of Law In Opposition to Plaintiffs' Motion for a Preliminary Injunction, filed on June 12, 2002, **before** Plaintiffs amended their Complaint, that **Ruland Road "plays an integral role in the outcome of this action."** (Defs. Opp'n Mem. at 2.)  The Second Circuit Court of Appeals agreed, explaining the success of Plaintiffs' *initial* complaint may depend on decisions regarding the use of certain affordable housing funds and the use of the land at Ruland Road.  *Fair Hous. in Huntington Comm. v. Town of Huntington*, 316 F.3d 357, 367-68 (2d Cir. 2003) (holding that how Defendants utilize $2.5 million purportedly reserved by the Town to support certain affordable housing measures, as well as how property at Ruland Road is ultimately utilized, are relevant in assessing the merits of Plaintiffs' claims).  Indeed, even in its present Motion to Dismiss, the Town concedes that the development of The Greens and Ruland Road are intimately intertwined.  *See, e.g.,* Defs. Br. at 16 ("In conjunction with and as a condition of the rezoning of the Greens site, . . . SBJ . . . agreed to construct over 122 affordable, non age-restricted units at the Ruland Road site.").

Furthermore, Plaintiffs' Complaints challenge an ongoing pattern and practice of racial discrimination constituting a continuing wrong for which the statute of limitations is continuously triggered and retriggered.  *See E. Paralyzed Veterans Ass'n v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2001) (holding challenged discriminatory housing practice to be a continuing violation).  Whether a wrong is a "continuing wrong" "turns on two principal considerations:  the nature of the wrong . . .

and the ability of the wrong-doer to take corrective action." *United States v. Yonkers Bd. of Educ.*, 30 F. Supp. 2d 650, 651-52 (S.D.N.Y 1998); *see also id.* at 651-53 & n.1 (holding that Fair Housing Act violations documented in earlier case against defendants, coupled with current violations of the Fair Housing Act, were sufficient to document an ongoing violation); *NAACP v. Town of Huntington*, 689 F.2d 391, 393 n.3 (2d Cir. 1982) (noting that the alleged violations of Title VIII – the Town's zoning ordinances – were continuing); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F. Supp. 1213, 1228 (S.D.N.Y. 1992) (while the "last asserted occurrence of the practice," when viewed alone, may not violate a statute, if a continuing practice has been established, acts falling outside of the limitations period that are part of the same practice may be considered in reading as acts which could form the basis of a Fair Housing Act claim), *aff'd in part, rev'd in part on other grounds*, 6 F.3d 898 (2d Cir. 1993).

When a pattern of discrimination is alleged, the statute of limitations does not begin to run until the last actionable discriminatory act. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (concluding that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the applicable period]") (footnote omitted); *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001) ("if a plaintiff has experienced a '"continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it'"") (citations omitted); *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994) ("Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all

8

conduct that was a part of that violation, even conduct that occurred outside the limitations period."). Plaintiffs specifically complained of the Town's "ongoing exclusionary housing practices," including the Town's refusal to develop sufficient affordable family housing to this day. (Compl. ¶ 1.)[4] Accordingly, Plaintiffs' Complaint as it relates to the Ruland Road site is timely not only because Plaintiffs initiated a lawsuit in which, as Defendants stated when it suited their interests, the Ruland Road property "play[ed] an integral role" (Defs. Opp. Memo. at 2), this action is also timely based on the repeated and continuous violations by the Town regarding that site.

### 3.   Defendants Fail to Establish Laches As a Matter of Law.

Where plaintiffs have satisfied applicable statutes of limitations, courts have strongly disfavored consideration of a laches defense. *See United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law"). In fact, courts have held that the principle of separation of powers dictates that "federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations." *See Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 341 F. Supp. 2d 432, 453 (S.D.N.Y. 2004) (quoting *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997)); *Living Media India Ltd. v. Parekh*, No. 92 Civ. 8079 (TPG), 1994 WL 68193, at *2 (S.D.N.Y. Feb. 28, 1994) ("Nor would the court, if a specific statutory limitations period exists, normally bar an equitable or mixed action on laches grounds."). As noted above, Plaintiffs brought this action within the time period permitted by the statute of limitations and the laches defense is therefore meritless.

---

[4] The Town *still* has not approved any final plan for Ruland Road.

In order to establish a right to dismissal on the basis of laches, the Defendants must prove both unreasonable delay and prejudice to the defendants. *See N. Triphammer Dev. Corp. v. Ithaca Assocs.*, 704 F. Supp. 422, 427 (S.D.N.Y. 1989) (denying motion to dismiss on laches noting that continuing negotiations on a contract precluded a claim of laches). Defendants fail to establish either element, having made no showing of unreasonable delay, and offering no argument or evidence suggesting that the Town would be negatively impacted as a result of delay should the Court grant the relief Plaintiffs seek. Absent any showing of unreasonable delay or prejudice, Defendants are not entitled to a dismissal on laches.

Finally, a laches defense is inappropriate where the public interest is substantially implicated. *See Steubing v. Brinegar*, 511 F.2d 489, 494-95 (2d Cir. 1975) (affirming injunction against bridge construction despite challenge on laches grounds, because the plaintiffs were acting in the public interest); *Student Pub. Interest Research Group of N.J., Inc. v. P.D. Oil & Chem. Storage, Inc.*, 627 F. Supp. 1074, 1085 (D.N.J. 1986). ("As citizen plaintiffs stand in the shoes of the government 'as private attorneys general,' it makes no sense to apply laches in a citizen suit. Citizen plaintiffs should not have fewer rights to enforce the statute than government agencies."). Plaintiffs have assumed the role of private attorneys general in pursuing this action in the belief that the public interest is substantially implicated. Accordingly, Defendants' motion to dismiss on the basis of laches should be denied.

### 4.    Claims Pursued by Additional Plaintiffs in the Amended Complaint Are Not Barred.

Defendants' challenge to Athena Hawkins, Lynda John, Ian John and the NAACP (the "Additional Plaintiffs") as having joined this action after the limitations period

passed is without merit. The Additional Plaintiffs assert claims identical to those brought by the original Plaintiffs and arising out of the same conduct of the Defendants. Adding these new Plaintiffs does not increase the Defendants' exposure to monetary damages or prejudice the Defendants in any way. *See* FED. R. CIV. P. 15(c); *Andujar v. Rogowski*, 113 F.R.D. 151, 158 (S.D.N.Y. 1986) ("Because each of the three plaintiffs sought to be added asserts claims identical to those made by the original four plaintiffs and that arise from the very same incident, defendants face no prejudice in defending those claims.").[5] Similarly, the claims concerning Ruland Road raised in the Amended Complaint arise out of the same discriminatory conduct and policies alleged in the Complaint and as such should not be barred. Furthermore, courts in the Second Circuit are "liberal" in granting relation back under Rule 15(c). *See In re Am. Express Co. Sec. Litig.*, No. 02 Civ. 5533 (WHP), 2004 WL 632750, at *7 (S.D.N.Y. Mar. 31, 2004) (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 87 (2d Cir. 1999). Accordingly, even if the applicable limitations periods had passed prior to their joinder – which of course it had not – the added plaintiffs' claims should not be barred.

## C.   DEFENDANTS HAVE FAILED TO ESTABLISH THE ABSENCE OF INDISPENSABLE PARTIES.

FED. R. CIV. P. 19(a) provides that parties are necessary and shall be joined if they are subject to service of process and their joinder will not deprive the court of jurisdiction over the subject matter of the action, and:

(1)   in the person's absence complete relief cannot be accorded among those already parties, or

---

[5] "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." FED. R. CIV. P. 21; *see also Kingsford v. Md. Nat'l Bank*, No. 91 Civ. 6963 (LMM), 1992 WL 309784, at *1 (S.D.N.Y. Oct. 9, 1992).

> (2)     the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a).

Defendants argue that "a collection of individuals and corporations" can claim an interest in this litigation under Rule 19(a)(2)(i).  But Defendants cannot prevail under Rule 19(a)(2) because none of the allegedly indispensable parties have moved to join the instant litigation.  The Second Circuit has explained that under the second prong of Rule 19(a), "[i]t is the absent party that must 'claim an interest.'"  *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) and 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1604, at 49 (2d ed. 1986)).[6]

Defendants also cannot satisfy Rule 19(a)(1), as they cannot demonstrate that this Court is unable to grant complete relief among those already parties.  Plaintiffs' prayer includes the following categories of relief:   (1) declaratory relief regarding the discriminatory nature of the Defendants' action (prayer a); (2) injunctive relief (prayer b); and (3) damages and costs (prayer c-f).  This Court can grant such relief without compromising the interests of the Greens "contract-vendees" and developers the Town claims to be necessary and indispensable to this action.

---

[6] Notably, until April 8, 2004, SBJ was a defendant in this action and was provided with a courtesy copy of Plaintiffs' Amended Complaint on that date.  SBJ therefore is well aware of the claims asserted by the Plaintiffs, the relief sought, and is on notice of any perceived impact on its interests or risks resulting from this litigation.  Moreover, as SBJ's "sister company" (Defs. Br. at 3), Ruland Road  LLC is also on notice of this litigation and could intervene to protect any perceived interests at stake.

12

A closer look at the specific parties Defendants claim are necessary and indispensable further exposes the flaws in the Town's Rule 19 argument.

### 1. S.B.J. Associates, LLC Is Not a Necessary Party.

Defendants claim that S.B.J. Associates, LLC ("SBJ") is a necessary and indispensable party to this litigation due to the purported potential that SBJ "would be exposed to multi-million dollar damage claims from the injured homeowners." (Defs. Br. at 7.) But "the speculative possibility [of] future litigation is not a sufficient basis for mandatory joinder." *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 138 (E.D.N.Y. 2000); *see also Manning v. Energy Conversion Devices, Inc.,* 13 F.3d 606, 609 (2d Cir. 1994) (mere possibility of future litigation did not justify compulsory joinder); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (same). Moreover, the relief Plaintiffs seek does not require anything of SBJ, let alone implicate any rights they might have. This likely explains why SBJ, which is aware of this litigation and in a better position than Defendants to determine whether its rights are threatened by this action, has not chosen to intervene.

### 2. Ruland Road LLC is Not a Necessary Party.

Ruland Road LLC has likewise opted not to intervene in this litigation. In fact, Ruland Road LLC has appeared (through counsel) before Magistrate Judge Wall to object to certain discovery requests in this action and did not express any desire then or since to join this litigation.

Furthermore, the Town's claim that Ruland Road LLC is necessary and indispensable fails on the merits. Because construction has not yet begun on Ruland Road and injunctive relief may indeed affect the development as a whole, Ruland Road LLC has an interest in the injunctive relief sought. But that does not mean that relief

13

sought will *harm* Ruland Road's interests, which is what the company presumably determined when it decided not to join this lawsuit.

The Town claims that Plaintiffs' confidence, as expressed in their opposition to Defendants' initial motion to dismiss, that "the Court will not ignore the interests of third parties in shaping injunctive relief, if such interests exist" (Defs. Br. at 11), "offer[s] no method or manner for this Court to," *inter alia*, "[l]earn of the specific interests of the affected third parties ... ." But

> the question of whether or not an entity or individual should be a party to an action is something quite different from the questions and problems associated with obtaining evidence from such an entity or individual. Rule 19 . . . does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication.

*Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999) (citations omitted); *see also Giaguaro S.p.A. v. Amiglio*, 257 F. Supp. 2d. 529, 541 (E.D.N.Y. 2003) ("[A] party is not necessary for Rule 19 purposes merely because the plaintiff needs to obtain evidence from the party. . . . In fact, a party is not necessary even if the defendant would have to defend the absent party's actions at trial.") (citing *Johnson*, 189 F.3d at 188).

### 3.    The Contract Vendees Are Not Necessary Parties.

Plaintiffs also contend that certain "contract vendees" at the Greens are necessary and indispensable. (Defs.. Br. at 11-12.) Defendants complain that the contract vendees purchased at the Greens on the basis of a "specific development plan" (Defs. Br. at 9) that purportedly could be altered if Plaintiffs prevail in the instant litigation. In one respect, Defendants' claim that "affording relief without any of the affected property owners of the Greens is abjectly impossible" is correct. Plaintiffs' requested relief would force the Town to stop the discriminatory policies that have kept communities like the Greens so

14

disproportionately white for so long, so the Greens residents may very well find their imagined "rights" to live in a community with a disproportionately low number of minority families nearby impacted. But one's so-called interest in living in a segregated Town is hardly the type of interest this Court should protect. And to the extent that the instant litigation may in some remote way implicate any claims contract vendees might have relating to specific Greens development plans on which they purportedly relied, such speculative claims hardly make such vendees necessary or indispensable to the instant litigation. As explained above, the mere potential for speculative litigation does not support dismissal under Rule 19. *See* Section C.1., *supra*.

In short, Defendants' failure to demonstrate how the contract-vendees -- or any other nonparties -- are "necessary or indispensable to a just adjudication" is fatal to their Rule 19-based argument. *See Johnson*, 189 F.3d at 188. Plaintiffs' prayer for relief asks that this Court fashion relief that accounts for the discriminatory impact of the Greens project, either by including the Greens property in that relief, or, should this Court find that the impact of the Greens project can best be mitigated via the numerous other means requested in Plaintiffs' Complaint, then by other injunctive, declaratory and/or compensatory relief. Defendants' speculation that under some hypothetical set of circumstances, relief might possibly affect certain non-parties is an insufficient basis for dismissal. *See, e.g., Savoia Film S.A.I. v. Vanguard Films, Inc.*, 10 F.R.D. 64, 66 (S.D.N.Y. 1950) (holding third party to contract in dispute whom party had contracted "on behalf of" was not an indispensable party).

**4.      A Finding that any Absent Party Was Necessary Would Not Warrant Dismissal.**

Finally, even if this Court were to find that one or more contract vendees, SBJ, or Ruland LLC are necessary parties, the motion to dismiss should not be granted.  SBJ and Ruland LLC are both subject to the jurisdiction of this Court, and their joinder would not destroy this Court's jurisdiction over the matter.  Accordingly, if the Court were to find either a necessary party, the ability to join them precludes dismissal.  *See* FED. R. CIV. P. 19.

Courts have been consistent in their reluctance to grant motions to dismiss if the action can proceed with the parties before it.  For example, in *Jota v. Texaco Inc.*, 157 F.3d 153 (2d Cir. 1998), the Second Circuit vacated and remanded the district court's decision to dismiss the complaint because of the failure to join an indispensable party.  The Court of Appeals explained that when an indispensable party is not joined, "[a]mong the Court's options is to 'order a pleading amended . . . when by restructuring the relief requested plaintiff is able to change the status of an "indispensable" party to that of merely a Rule 19(a) party or otherwise prevent the ill effects of a nonjoinder.'"  *Id.* at 162 (ellipsis in original) (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1609, at 132-33 (2d ed. 1986)); *see also Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990) (holding that because the defendant has the ability to join an indispensable party "by asserting a compulsory counterclaim against it, the court could not in equity and good conscience dismiss the suit for failure to join [that] party").

Furthermore, given the sheer number of purported "contract vendees" and Defendants' failure to identify them by name, joinder of all of the contract vendees is not

16

feasible. And when joinder is not feasible, the critical inquiry becomes whether a party is indispensable. *See, e.g., Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000) (noting that if "joinder of the absent party is not feasible for jurisdictional or other reasons," then the court must determine whether the absent parties are "indispensable" parties.); *see also On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 251 (D. Conn. 2001) (same). To address this issue, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it. . . ." FED. R. CIV. P. 19(b). The statute enumerates four relevant considerations on indispensability:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

Notably, the only vendees the Town asserts are indispensable are those who Defendants claim purchased units at the Greens. Defendants have not – because they cannot – point to any contract vendees with similar interests in property at Ruland Road. The only contract vendee interest expressed by Defendants (beyond their ownership rights which Plaintiffs do not seek to affect) appears to be an inchoate expectancy regarding the "specific development plan." (Defs. Br. at 9.) Plaintiffs question whether such expectancy constitutes a cognizable interest, especially absent proof of the nature of representations, if any, made to the contract vendees on their purchase. However, even if that expectancy gives rise to an interest to be protected, the contract vendees may seek to protect their expectancy through the Defendants' permitting and approval process.

17

Additionally, the Court may also consider shaping the relief in such a manner as to lessen or avoid entirely any prejudice to the contract vendees. Accordingly, they are not indispensable to this action and need not be joined.

### III.   CONCLUSION

Based on the foregoing, and as the Amended Complaint unquestionably states all requisite elements of the claims brought therein, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: New York, New York
  April 19, 2006

Respectfully submitted,

Jeffrey Glekel (JG 3781)
Michael Birnbaum (MB 3645)
Gary J. Hacker (GH 7883)
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

 -and-

Nadine Cohen (NC 4922)
Co-counsel for Plaintiffs
LAWYERS' COMMITTEE FOR
 CIVIL RIGHTS OF THE BOSTON
 BAR ASSOCIATION
Suite 443
294 Washington Street
Boston, MA 02108

Anson Asaka, Esq.[*]
Of Counsel
THE NATIONAL ASSOCIATION
 FOR THE ADVANCEMENT OF
 COLORED PEOPLE
4805 Mt. Hope Drive
Baltimore, Maryland 21215
(410) 580-5799

---

[*] Not currently admitted in New York; will be seeking admission *pro hac vice.*

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney duly admitted to practice law before this

Court, hereby certifies under penalty of perjury, that on April 19, 2006, I caused a

true copy of the

- ***Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion Under Rule 12(b)(7) and 12(c)***

to be served upon the following party in the manner indicated:

<u>By Federal Express</u>

James Ryan, Esq.
Thomas Wassel, Esq.
Cullen and Dykman, Bleakly Platt LLP
100 Quentin Roosevelt Blvd.
Garden City, New York 11530

Dated:  New York, New York
          April 19, 2006

Steven Ray Katzenstein (S.K. 7599)