UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FAIR HOUSING IN HUNTINGTON
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA
HAWKINS, LYNDA JOHN, and IAN JOHN,

                              Plaintiffs,          **MEMORANDUM AND ORDER**
                                                   02-CV-2787 (DRH) (WDW)

            - against -

TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF
HUNTINGTON, and TOWN OF
HUNTINGTON PLANNING BOARD,

                              Defendants.
---------------------------------------------------------------X

**A P P E A R A N C E S :**

**For the Plaintiffs:**
**Skadden, Arps, Slate, Meagher & Flom, LLP**
Four Times Square
New York, New York 10036
By: Jeffrey Glekel, Esq., Michael D. Birnbaum, Esq., Gary J. Hacker, Esq.,
      and Sean Young, Esq.

**For the Defendants:**
**Cullen and Dykman LLP**
Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
By: James G. Ryan, Esq., Thomas B. Wassel, Esq., and Elizabeth Iovino, Esq.

**HURLEY, Senior District Judge:**

               Plaintiffs Fair Housing in Huntington Committee ("FHHC"), Huntington Branch,

NAACP, Bernard Peyton, Athena Hawkins, Lynda John, and Ian John  (collectively,

"Plaintiffs") bring this action against defendants Town of Huntington, New York (the "Town" or

"Huntington"), Town Board of the Town of Huntington (the "Town Board"), and Town of

Huntington Planning Board (the "Planning Board") (collectively, "Defendants") challenging two

housing developments in the Town that allegedly perpetuate and exacerbate race and national

origin discrimination in housing in violation of various federal laws. Defendants move to

dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) and

12(c). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The background of this case is set forth in this Court's prior decisions dated

March 23, 2005 and November 29, 2005, as well as the Second Circuit's decision in *Fair

Housing in Huntington Comm. Inc. v. Town of Huntington, New York*, 316 F.3d 357 (2d Cir.

2003), familiarity with which is assumed. Thus, the Court will only state the facts necessary for

disposition of the instant motion.

### The Original Complaint and Plaintiffs' Request for a Preliminary Injunction

On May 8, 2002, plaintiffs FHHC, Senaye Green, Bernard Peyton, and Robert

Ralph filed the initial Complaint in this action against the Town, the Town Board, the Planning

Board, and S.B.J. Associates LLC ("SBJ") alleging, inter alia, that the development by SBJ of a

382-acre parcel of land located in the Town would have a disparate impact on minorities with

regard to housing. At the time the Complaint was filed, this parcel of land – formerly known as

Long Island Development Center ("LIDC") and presently known as The Greens at Half Hollow

(the "Greens") – comprised the single largest remaining tract of undeveloped, residentially-

zoned property in Huntington's overwhelmingly white neighborhoods. Citing the Second

Circuit's decision in *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926 (2d Cir.

1988), Plaintiffs alleged that the Town "ha[d] an extended and well documented history of

concentrating Minority Families in the least desirable areas of Huntington in violation of the Fair

Housing Act." (Compl. ¶ 3.) Nevertheless, "on September 12, 2000, the Planning Board resolved to grant SBJ's request for a density bonus [i.e., an allowance for more homes per acre that existing zoning ordinarily permits], without any provision whatsoever for affordable family housing." (*Id.* ¶ 51.) Instead, the density bonus granted by the Town permitted SBJ to build 1,375 housing units – 1,250 more than the 125 units permitted by the Greens' previous zoning – with all affordable units restricted to seniors. (*Id.* ¶ 52.) Plaintiffs alleged that by facilitating SBJ's development of age-restricted homes at the Greens, the Town was further perpetuating Huntington's history of segregation in that senior housing generally results in a disproportionately low occupancy by minorities. The Complaint sought to enjoin the Town from proceeding with development of the Greens and also sought damages.

Soon after filing the Complaint, Plaintiffs sought a preliminary injunction directing the Town to revoke all then current permits allowing development of the Greens, enjoining the Town from issuing any further permits necessary for the development, and halting construction of the Greens by SBJ. By bench decision dated June 26, 2002, the Court denied Plaintiffs' motion, finding that Plaintiffs had failed to establish a likelihood of success on the merits of their claims against the governmental actors. With regard to SBJ, which was a defendant in the original action, the Court found that Plaintiffs had failed to meet the less rigorous standard of establishing a sufficiently serious question going to the merits and that even if they had, the balance of hardships tipped in Defendants' favor. (June 26, 2002 Tr. at 81-88.) This decision was affirmed by the Second Circuit on January 17, 2003. *See Fair Housing in Huntington Comm.*, 316 F.3d 357.

*The Amended Complaint and the Parties' Attempted Settlement*

On April 8, 2004, Plaintiffs filed the Amended Complaint which is the subject of the instant motion. The Amended Complaint differs from the original Complaint in several ways. First, the parties are different. Two plaintiffs have been dropped (Senaye Green and Robert Ralph) and four plaintiffs have been added (Huntington Branch NAACP, Athena Hawkins, Lynda John, and Ian John). In addition, the Amended Complaint no longer names SBJ as a defendant.

Next, although the Amended Complaint continues to seek redress based upon the Greens project and the allegedly discriminatory effect of its senior housing, Plaintiffs have added a new claim concerning a separate housing development known as "Sanctuary" at Ruland Road. According to the Amended Complaint, SBJ, the developer of the Greens, also "owned certain property rights for Sanctuary." (Am. Compl. ¶ 9.) The Amended Complaint alleges that in July 1999, SBJ submitted its original proposal for the Greens to the Town. (*Id.* ¶ 42.) This proposal "included a development plan for Sanctuary comprising two- and three- bedroom homes that would at least partially ameliorate the discriminatory impact that the Greens development would have on Minority Families." (*Id.*) The proposal "was effectively rejected when the Town failed to even vote on the plan for more than a year." (*Id.* ¶ 9.) After the proposal was revised, however, on September 11, 2000, "so that the only affordable units planned for Sanctuary were one-bedroom and studio apartments, the Town acted the very next day to recommend the housing plan's approval, passing Resolution No. 2000-684." (*Id.*) Plaintiffs allege that Defendants acted in a discriminatory fashion because they knew or should have known that the multi-bedroom units would increase the minority population while the one-bedroom and studio

4

units were far less likely to attract minorities. (*Id.* ¶ 11.) Thus, the Amended Complaint seeks redress based upon the senior housing at the Greens as alleged in the original Complaint, plus the now targeted small apartments proposed for Sanctuary, both of which, Plaintiffs proffer, discriminate against minority families.

The Amended Complaint asserts five causes of action: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq.; (2) violation of 42 U.S.C. § 1982; (3) violation of 42 U.S.C. § 1983; (4) violation of 42 U.S.C. § 2000d et seq.; and (5) violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution. On March 23, 2005, the Court granted Defendants' motion to dismiss the Amended Complaint and this case was dismissed in its entirety. Thereafter, however, on November 29, 2005, the Court granted Plaintiffs' motion for reconsideration. Upon reconsideration, the Court denied Defendants' motion to dismiss Plaintiffs' first, second, third, and fifth causes of action. The fourth cause of action remains dismissed.

In May 2006, Defendants filed another motion to dismiss. However, in January 2007, the parties reached a settlement before Magistrate Judge William D. Wall and Defendants' motion was marked off the calender. By Order dated February 13, 2007, Judge Wall directed the parties to file a stipulation of discontinuance once the Town Board resolution was adopted. After several conferences before Judge Wall, Plaintiffs filed a motion seeking enforcement of the parties' settlement agreement. By decision dated March 31, 2008, Judge Wall denied Plaintiffs' motion. Plaintiffs thereafter moved for reconsideration. This motion was denied by Judge Wall on March 11, 2009.

Plaintiffs appealed Judge Wall's decisions on March 25, 2009, but later withdrew

their objections.  (*See* docket no. 154.)  Accordingly, and finding no clear error in Judge Wall's

Orders, which the Court treated as Reports and Recommendations, by Order dated April 2, 2010,

the Court adopted Judge Wall's recommendations and denied Plaintiffs' motion to enforce the

settlement.

***The Present Motion to Dismiss***

Presently pending before the Court is Defendants' motion to dismiss the

Amended Complaint, initially filed in May 2006 and later reinstated to the calendar after the

parties' settlement fell apart.  Defendants argue that all claims asserted in the Amended

Complaint are barred by the applicable statute of limitations and/or laches and that this action

cannot go forward absent several necessary and/or indispensable parties.  Plaintiffs counter that

their claims are not time barred and that Defendants have failed to establish the absence of

indispensable parties.  For the reasons that follow, the Court finds that Plaintiffs' new claims

concerning Sanctuary are time-barred and are therefore dismissed.  The remainder of

Defendants' motion is denied.

## DISCUSSION

I.     ***Statute of Limitations***

The parties agree that Plaintiffs' FHA claims are governed by the two-year statute

of limitations period in 42 U.S.C. § 3613(a)(1)(A) and that Plaintiffs' civil rights claims are

governed by the three-year statute of limitations period "borrowed" from analogous New York

state law.  Defendants contend, however, that all of Plaintiffs' claims are time-barred.  For the

reasons that follow, the Court finds that the claims asserted in the original Complaint are timely

but that the claims added by the Amended Complaint are untimely in that they do not relate back

to the original pleading.

A.       *The Timeliness of the Original Complaint*

Defendants' first argument is that Plaintiffs' claims concerning the Greens, which claims were asserted in the original Complaint, are time-barred.  Defendants' argument is without merit.

The original Complaint – which specifically challenged the exclusion of minorities from the Greens – was filed in May 2002.  It alleged that the State of New York sold the former LIDC site to SBJ in 1999 and that the Town issued a resolution in favor of the development of the Greens at that site in September 2000.  That resolution also granted SBJ's request for a density bonus permitting SBJ to build 1,375 housing units – 1,250 more than the 125 units permitted by the Greens' previous zoning – for senior housing.  Defendants maintain that the limitations period accrued prior to the Town's issuance of the resolution, arguing that Plaintiffs "knew, or should have known, the intentions of the Town regarding the development of the LIDC site for senior citizen housing."  (Defs.' Mem. of Law in Supp. at 14.)  Defendants point to, inter alia, a Task Force report concerning the Greens issued in 1995 by the LIDC Task Force, non-party SBJ's purchase of the LIDC property in 1999, and LIDC's application to the Town in 1999 for a zoning change.  Defendants do not explain, however, how the Town's mere deliberations somehow started the limitations clock for challenges to subsequent Town zoning decisions.  Similarly, Defendants cite no legal authority for their suggestion that preliminary activity by a developer would trigger the limitations period in this action against the Town for its allegedly discriminatory action.  Accordingly, the Court finds that the original Complaint, which was filed less than two years after the Town's September 2000 resolution granting SBJ's zoning

request, was timely filed.

**B.**     *The Relation Back of the Amended Complaint*

The timeliness of the original Complaint does not resolve the statute of limitations question with respect to the Sanctuary development, which was not mentioned in the original Complaint.  Because the Sanctuary rezoning was enacted by resolution on November 21, 2000, and the Amended Complaint was not filed until April 8, 2004, more than three years later, the Amended Complaint is timely with regard to these claims only if they relate back to the original Complaint.  For the reasons discussed below, the Court finds that they do not.

**1.**     *The Relation Back Doctrine*

Relation back is governed by Federal Rule of Civil Procedure 15(c) which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."  *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks and citation omitted).  "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs."  *Id.*  As one noted treatise states:

> Thus, if plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c)(1)(B) will not authorize relation back. For example, amendments alleging the separate publication of a libelous statement, the breach of an independent contract, the infringement of a different patent, or even a separate violation of the same statute may be subject to the defense of statute of

limitations because of a failure to meet the transaction standard.

. . . .

On the other hand, amendments that merely correct technical
deficiencies or expand or modify the facts alleged in the earlier
pleading meet the Rule 15(c)(1)(B) test and will relate back. Thus,
amendments that do no more than restate the original claim with
greater particularity or amplify the details of the transaction
alleged in the preceding pleading fall within Rule 15(c)(1)(B).

6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal*

*Practice and Procedure* § 1497 (2d ed. 2010).

### 2. *A Comparison of the Two Pleadings*

#### (a) *The Original Complaint*

Defendants argue that the Sanctuary claims do not relate back to the original

Complaint because they were not referenced in that pleading. Defendants are correct that there

are no allegations concerning Sanctuary in the original pleading. In fact, the first paragraph of

the original Complaint entitled "NATURE OF ACTION" alleges in pertinent part as follows:

This is a housing discrimination action for declaratory judgment,
injunctive relief, and damages for ongoing exclusionary housing
practices on the basis of race, national origin and familial status by
the Town of Huntington . . . and others working in concert with, or
on behalf of, the Town. This action specifically challenges the
exclusion of African-American, other black, Hispanic and other
racial and ethnic minority families ("Minority Families"), from the
soon to be built housing development at the former [LIDC now
known as the Greens]. . . .

(Compl. ¶ 1.)

The original Complaint goes on to allege that the Town's approval of "the

construction of 1,375 single family homes and a golf course at the Greens without providing for

any affordable family housing" (*id.* ¶ 6) will further exacerbate housing segregation in

Huntington as demonstrated by previous senior housing developments in Huntington which are overwhelmingly white (*id.* ¶ 55). Although the original Complaint alleges "ongoing exclusionary housing practices" (*id.* ¶ 1), and speaks generally of Huntington's "extended and well documented history of concentrating Minority Families in the least desirable areas of Huntington" (*id.* ¶ 3), it contains no reference to Sanctuary and is instead narrowly focused on one particular housing development, viz. the Greens.

**(b)**  ***The Amended Complaint***

The Amended Complaint continues to seek redress for the Greens project but additionally challenges the exclusion of minority families from Sanctuary. The first paragraph, entitled "NATURE OF ACTION," is taken virtually verbatim from the original Complaint but now inserts Sanctuary as a basis for relief. It reads, in pertinent part, as follows:

> This is a housing discrimination action for declaratory judgment, injunctive relief, and damages for ongoing exclusionary housing practices on the basis of race, national origin and familial status by the Town of Huntington . . . and others on behalf of the Town. This action specifically challenges the exclusion of African-American, other black, Hispanic and other racial and ethnic minority families ("Minority Families") from the land known as "Sanctuary" at Ruland Road and the Greens at Half Hollow . . . .

(Am. Compl. ¶ 1.)

Quoting from the Second Circuit's decision in *Fair Housing*, 316 F.3d at 367, the Amended Complaint alleges that "'[a]s a condition to the change of zoning [for the Greens], and as a prerequisite to permitting of the final phase of The Greens project, [developer] SBJ must develop another site it owns within the Town – referred to by the parties as the Ruland Rd. site – *with affordable, multi-unit family housing*.'" (Am. Compl. ¶ 7 (emphasis added by Amended Complaint).) Consistent therewith, SBJ submitted its original proposal for the Greens to the

Town in July 1999, which included a proposal for affordable multi-unit family housing at Sanctuary. (*Id.* ¶ 9.) After the Town failed to vote on this proposal for over one year, SBJ revised the Sanctuary proposal to include only affordable one-bedroom and studio apartments. (*Id.*) "[T]he Town acted the very next day [September 12, 2000] to recommend the housing plan's [i.e., Sanctuary's] approval, passing Resolution No. 2000-684." (*Id.* ¶ 9.) Plaintiffs allege that Defendants acted in a discriminatory fashion because they knew or should have known that the multi-bedroom units would increase the minority population while the one-bedroom and studio units were far less likely to attract minorities. (*Id.* ¶ 11.)

### 3. *The Sanctuary Claims Do Not Relate Back to the Greens Claims*

As noted above, the original Complaint "specifically challenges" the exclusion of minority families from the Greens. (Compl. ¶ 1.) It alleges that the "development of the Greens is the last opportunity for the Town to even partially ameliorate the disparate impact on the housing market for Minority Families created by the decades-long, judicially-recognized, racially discriminatory housing practices promulgated by the Town." (*Id.* ¶ 8.) Its focus is on the Town's September 12, 2000 rezoning resolution which granted SBJ's request for a density bonus with regard to the Greens and limited all affordable housing to seniors. There is no reference to Sanctuary.

Plaintiffs argue that the Sanctuary claims, raised for the first time in the Amended Complaint, relate back to the original pleading because the two developments are "intimately intertwined." (Pls.' Mem. of Law in Opp'n at 7.) Plaintiffs rely on a statement made by Defendants in 2002 that Sanctuary "plays an integral role in the outcome of this action" (Defs' June 12, 2002 Mem. of Law at 2), and the observation by the Second Circuit in 2003 that SBJ

was required to develop Sanctuary with affordable multi-unit housing to ameliorate the discriminatory impact of the Greens, *Fair Housing*, 316 F.3d at 367. In fact, this condition with regard to Sanctuary is reflected in the September 12, 2000 Resolution which granted SBJ's request for a density bonus with regard to the Greens. Plaintiffs assert that the interrelationship of the two housing developments require a finding that the Sanctuary claims arise out of the same conduct complained of in the original Complaint, i.e., the Greens.

While the Court agrees that Plaintiffs' factual allegations concerning Sanctuary may very well be significant with regard to Plaintiffs' proof concerning the Greens, or as stated by Plaintiffs, that "the success of Plaintiffs' *initial* complaint may depend on decisions regarding the use of . . .the land at [Sanctuary]," (Pls.' Mem. of Law in Opp'n at 7 (emphasis in original)), that does not mean that the original Complaint provided Defendants with adequate notice of Plaintiffs' Sanctuary claims. The new allegations regarding Sanctuary do not merely "amplif[y]" or "state[] in a slightly different way" Plaintiffs' claims concerning the Greens. *Cf. Slayton*, 460 F.3d at 229. Instead, they present an entirely new claim for relief based upon facts not included in the original pleading. The original Complaint alleged that the Greens was inherently discriminatory against minority families because all of the affordable housing was restricted to seniors. The Amended Complaint, by contrast, seeks to additionally attack the proposed Sanctuary development as discriminatory due to the small size and configuration of the apartments which will allegedly deter minority families. They are two separate housing developments representing two distinct violations of the relevant statutes. Far from providing Defendants with adequate notice, it would require a "leap of imagination" on the part of Defendants to anticipate that Plaintiffs' suit on the Greens would implicate them with regard to

Sanctuary.  *Cf. id.*

Moreover, Plaintiffs' attempt to invoke the continuing violation doctrine has no merit.  Plaintiffs argue that the two Complaints "challenge an ongoing pattern and practice of racial discrimination constituting a continuing wrong for which the statute of limitations is continuously triggered and retriggered."  (Pls. Mem. of Law in Opp'n at 7.)   Plaintiffs' Sanctuary claims, however, arise out of the Town's November 2000 zoning decision which limited the size of the development to studio and one-bedroom units, a date which falls outside the two and three year limitation periods given that Plaintiffs filed the Amended Complaint in April 2004.  Plaintiffs have not identified a single unlawful practice with regard to their Sanctuary claims that continued into the limitations period.

To the extent Plaintiffs suggest that the Sanctuary claims relate back because the original Complaint put Defendants on notice that the disputed conduct was of a continuing nature, this argument is similarly unavailing.   As explained above, Plaintiffs' initial Complaint alleged a specific act of wrongdoing, i.e., the exclusion of minority families from the Greens, which is a distinct occurrence from the subsequent exclusion of minority families from Sanctuary.  Although the original Complaint makes general reference to the Town's "ongoing exclusionary housing practices" (Compl. ¶ 1), and to Huntington's history of housing segregation, such general references are not sufficient to place Defendants on notice for all future alleged discriminatory acts with regard to housing within the Town.

In sum, the Court finds that Plaintiffs' claims regarding Sanctuary are based on an "entirely distinct set of factual allegations," *Slayton*, 460 F.3d at 228, and therefore do not relate

back to the filing of the original Complaint.[1]

### 4. *The New Plaintiffs Relate Back to the Original Complaint to the Extent They Seek Redress Based Upon the Greens*

The Amended Complaint adds four new plaintiffs, to wit, Huntington Branch, NAACP; Athena Hawkins; Lynda John; and Ian John. Defendants argue that these new parties do not relate back to the original Complaint because they "offer no excuse why they delayed two (2) additional years to jump on the bandwagon" (Defs.' Mem. of Law in Supp. at 14) and because they "raise entirely new claims via the amended complaint" (*id.* at 22).

The Federal Rules of Civil Procedure do not expressly provide for relation back of an amendment that adds new plaintiffs. Rule 15(c)(1)(C), however, explicitly addresses the addition of new defendants. That Rule provides that an amendment "chang[ing] the party or the naming of the party against whom a claim is asserted" relates back to a pleading if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading" and "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The advisory committee notes state that "[t]he relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier" and that "the

---

[1] In reaching this conclusion, the Court in no way considered Plaintiffs' delay in filing the Amended Complaint. *See Krupski v. Costa Crociere S.p.A.*, – S. Ct. –, 2010 WL 2243705, at *10 (June 7, 2010) ("[T]he speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back.").

attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." *Id.* advisory committee notes 1963 Amendment. Thus, courts have allowed relation back of new plaintiffs where defendants had fair notice of the new plaintiffs' claims and would not suffer undue prejudice. *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476, at *25 (E.D.N.Y. Sept. 19, 2005). *See also Perkins v. S. New England Tel. Co.*, 2009 WL 3754097, at *5 (D. Conn. Nov. 4, 2009).

In the Amended Complaint, the new individual plaintiffs seek "affordable, multi-bedroom housing in an integrated community." (Am. Compl. ¶¶ 19-21.) The addition of the term "multi-bedroom" is consistent with the addition of the Sanctuary claims, where the only affordable units allegedly planned were one-bedroom and studio apartments. Thus, it may be that the new individual plaintiffs seek redress based solely upon Sanctuary. However, it is not entirely clear from the Amended Complaint. Another reasonable view of the Amended Complaint is that the new individual plaintiffs seek redress based upon both Sanctuary and the Greens. To the extent the new plaintiffs seek redress based upon Sanctuary, they do not relate back to the original pleading as the Court has already found that these claims did not arise out of the conduct set forth in original Complaint. However, to the extent the individual plaintiffs, as well as Huntington Branch, NAACP, are suing based upon the allegedly discriminatory impact of the Greens, these claims arise out of the same conduct set forth in the original pleading, and Defendants will not suffer undue prejudice as a result of the new plaintiffs. Accordingly, the Court finds that the new plaintiffs relate back to the original pleading solely with regard to their claims arising out of the Greens.

## II.    *Defendants Have Failed to Establish the Absence of Indispensable Parties*

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties, arguing that the following parties are indispensable under Rule 19(a):  (1) the property owners and contract vendees of the Greens; and (2) SBJ, the owner and developer of the Greens.[2]  Defendants' argument is founded upon two contentions.  First, Defendants maintain that any relief granted by the Court in these parties' absence would "be prejudicial, subjecting the owners, developers and vendees to a precarious fate and resulting in complete disregard for their years of planning and monetary expenditures."  (Defs.' Mem. of Law in Supp. at 12.)  Second, Defendants contend that joinder of the over 600 contract vendees would be impracticable and that this case must therefore be dismissed under Rule 19(b).  The Court begins its analysis with a review of Rule 19.

### A.    *Federal Rule of Civil Procedure 19*

Rule 19(a) "defines those parties who are 'necessary' to an action."  *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002).  It provides as follows:

a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the

---

[2]  Defendants also argued that Ruland Road, LLC, SBJ's sister company and owner of Ruland Road where Sanctuary is to be developed, was a necessary and indispensable party. Because the Court has dismissed all claims pertaining to Sanctuary, the Court need not, and does not, address Defendants' Rule 19 arguments as to Ruland Road, LLC.

subject of the action and is so situated that
disposing of the action in the person's absence may:

> (i) as a practical matter impair or
> impede the person's ability to protect
> the interest; or

> (ii) leave an existing party subject to
> a substantial risk of incurring double,
> multiple, or otherwise inconsistent
> obligations because of the interest.

Fed. R. Civ. P. 19(a).

If a person who is "necessary" under Rule 19(a) cannot be joined, "the district court must determine whether the claim should be dismissed because the necessary party is 'indispensable.'" *Jonesfilm*, 299 F.3d at 139. In such a case, Rule 19(b) provides several factors to be considered by the court:

> 1) the extent to which a judgment rendered in the person's absence
> might prejudice that person or the existing parties;

> (2) the extent to which any prejudice could be lessened or avoided
> by:

>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;

> (3) whether a judgment rendered in the person's absence would be
> adequate; and

> (4) whether the plaintiff would have an adequate remedy if the
> action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). However, "[a] party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)." *Jonesfilm*, 200 F.3d at 139. Thus, the Court's first inquiry is whether SBJ and the property owners and contract vendees of the Greens are necessary parties to this

action.

**B.** ***SBJ and the Property Owners and Contract***
***Vendees of the Greens Are Not Necessary Parties***

**1.** ***Rule 19(a)(1)(A)***

As noted above, there are two standards for determining whether a party is necessary under Rule 19(a). Under the first standard, a party is necessary only if in that party's absence, "the court cannot accord complete relief *among existing parties*." Fed. R. Civ. P. 19(a)(1)(A) (emphasis added). In other words, as applied to this case, SBJ and the Greens' property owners and contract vendees would qualify as necessary parties under Rule 19(a)(1)(A) if the Court "cannot accord complete relief" as to the parties already named in the suit, namely Plaintiffs and the Town Defendants. In their briefing, Defendants focus more specifically on the second standard, set forth in Rule 19(a)(1)(B) and discussed *infra*, which pertains to the inability of a party to protect its interests if absent. In fact, even when arguing for the application of the first standard in their Reply Memorandum, Defendants again speak of the absent parties' interests. (*See* Defs.' Reply Mem. at 8 ("Complete relief cannot be accorded among those already parties to this lawsuit. . . . There are three sets of indispensable and necessary parties that have an interest in protecting their property rights . . . . ").) Thus, Defendants do not address how these parties' absence would preclude the Court from being able to fashion meaningful relief as between the existing parties.

To the extent Plaintiffs seek declaratory relief regarding the allegedly discriminatory nature of Defendants' actions, or damages and costs, Plaintiffs can obtain complete relief as to Defendants without SBJ and the property owners and contract vendees in the case. To the extent Plaintiffs seek injunctive relief enjoining Defendants from granting, and

18

ordering Defendants to withdraw, any permits allowing further construction or occupation of the

Greens, the result is the same. The zoning change and concomitant permits at issue will either

be enforced by the Town Defendants or not enforced. The fact that the non-parties may have an

interest that would be impaired by the outcome does not make them necessary parties under Rule

19(a)(1)(A) as their absence will not have any bearing on this Court's ability to accord complete

relief to the parties already in this case.

In *MasterCard International Inc. v. VISA International Service Association, Inc.*,

471 F.3d 377 (2d Cir. 2006), MasterCard sued defendant Federation Internationale de Football

Association ("FIFA") seeking enforcement of an alleged contractual provision giving

MasterCard the first right to acquire exclusive sponsorship rights in its product category for the

FIFA World Cup. While negotiating with MasterCard, FIFA was also in negotiations with VISA

regarding the same sponsorship rights. MasterCard sued FIFA for breach of contract and sought

injunctive relief enjoining FIFA from consummating, effectuating or performing any terms of the

VISA contract and ordering FIFA to perform its obligations under the alleged MasterCard

contract. Non-party VISA moved to dismiss the action contending that it was a necessary and

indispensable party under Rule 19.

In concluding that VISA was not a necessary party under what is now Rule

19(a)(1)(A), the Circuit found:

> A party is necessary under Rule 19(a)(1) only if in that party's
> absence "complete relief cannot be accorded *among those already
> parties*." Fed.R.Civ.P. 19(a)(1) (emphasis added). Visa's absence
> will not prevent the district court from granting complete relief
> between MasterCard and FIFA. Visa argues that without it in the
> case, MasterCard can receive only partial relief because Visa still
> holds contractual rights to the sponsorship rights and will file suit
> against FIFA to enforce the Visa Contract.[] While there is no

19

question that further litigation between Visa and FIFA, and perhaps MasterCard and Visa, is inevitable if MasterCard prevails in this lawsuit, Rule 19(a)(1) is concerned only with those who are already parties. MasterCard can obtain complete relief as to FIFA without Visa's presence in the case. If MasterCard prevails and is granted its requested relief, FIFA will be enjoined from awarding the sponsorship rights to another party, including Visa. This will resolve the dispute between MasterCard and FIFA, and Visa's presence is unnecessary to decide those questions. Thus, Visa is not a necessary party under Rule 19(a)(1).

*MasterCard*, 471 F.3d at 385.

As in *MasterCard*, here, Plaintiffs can obtain complete relief without the non-parties present. Accordingly, the Court finds that the non-parties are not necessary parties under Rule 19(a)(1)(A).

### 2. *Rule 19(a)(1)(B)*

Under Rule 19(a), a party is necessary when "*that person claims an interest relating to the subject of the action* and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added). Here, none of the allegedly indispensable parties has moved to join the instant litigation and, thus, this subsection of Rule 19(a) is inapplicable. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir.1996) ("[Defendant's] attempt to assert on behalf of the Ministry its supposed concern about the dilution of its interest . . . falls outside the language of the rule. It is the absent party that must 'claim an interest.'"). *See also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983) (satisfying the second prong of Rule 19(a) is "contingent . . . upon an initial requirement that the absent party claim a

legally protected interest relating to the subject matter of the action"); *Reit v. Post Props., Inc.*, 2010 WL 743533, at *3 (S.D.N.Y. Feb. 24, 2010) (same).[3]

### C. Conclusion as to Rule 19

Because the Court finds that SBJ and the property owners and contract vendees of the Greens are not necessary parties under Rule 19(a), the Court need not address whether they are indispensable parties under Rule 19(b). Accordingly, because Rule 19 does not require that they be joined in this action, Defendants' motion to dismiss pursuant to Rule 12(b)(7) is denied.

### CONCLUSION

For all of the above reasons, Defendants' motion to dismiss the Amended Complaint is DENIED IN PART and GRANTED IN PART. All claims pertaining to Sanctuary are hereby dismissed.

**SO ORDERED.**

Dated: July 8, 2010
Central Islip, New York                    /s_____
                                           Denis R. Hurley,
                                           United States District Judge

---

[3] Even assuming, arguendo, that the non-parties did claim an interest in this litigation, it is questionable whether Rule 19(a)(1)(B) would apply. *See MasterCard*, 471 F.3d at 387 ("It is not enough under Rule 19(a)[(1)(B)] for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule 19(a)[(1)(B)] are only those parties whose ability to protect their interests would be impaired **because of** that party's absence from the litigation. . . . Thus, while Visa may have an interest that would be impaired by the outcome of this litigation, Visa still does not qualify as a necessary party under Rule 19(a)[(1)(B)] because the harm Visa may suffer is not *caused by* Visa's absence from this litigation. Any such harm would result from FIFA's alleged conduct in awarding Visa sponsorship rights it could not legally give.") (emphasis in original).