UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FAIR HOUSING IN HUNTINGTON
COMMITTEE, HUNTINGTON BRANCH,
NAACP, BERNARD PEYTON, ATHENA
HAWKINS, LYNDA JOHN, and IAN JOHN,

               Plaintiffs,             **MEMORANDUM AND ORDER**
                                         02-CV-2787 (DRH) (WDW)

        - against -

TOWN OF HUNTINGTON, NEW YORK,
TOWN BOARD OF THE TOWN OF
HUNTINGTON, and TOWN OF
HUNTINGTON PLANNING BOARD,

               Defendants.
---------------------------------------------------------------X
**A P P E A R A N C E S :**

**For the Plaintiffs:**
**Skadden, Arps, Slate, Meagher & Flom, LLP**
Four Times Square
New York, New York 10036
By: Jeffrey Glekel, Esq., Michael D. Birnbaum, Esq., Gary J. Hacker, Esq.,
    and Sean Young, Esq.

**For the Defendants:**
**Cullen and Dykman LLP**
Garden City Center
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
By: James G. Ryan, Esq., Thomas B. Wassel, Esq., and Elizabeth Iovino, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs Fair Housing in Huntington Committee ("FHHC"), Huntington Branch,

NAACP, Bernard Peyton, Athena Hawkins, Lynda John, and Ian John  (collectively, "Plaintiffs")

bring this action against defendants Town of Huntington, New York (the "Town" or

"Huntington"), Town Board of the Town of Huntington (the "Town Board"), and Town of

Huntington Planning Board (the "Planning Board") (collectively, "Defendants") asserting

violations of the fair housing laws. After this Court's recent dismissal of all claims in Plaintiffs'

Amended Complaint concerning a housing development known as "Sanctuary" at Ruland Road

(hereinafter referred to as "Ruland Road"), Plaintiffs seek leave to file a Second Amended

Complaint to once again assert allegations concerning this development. By Order to Show

Cause filed on August 11, 2010, Plaintiffs seek an Order (1) granting Plaintiffs permission to file

a Second Amended Complaint, (2) reinstating Plaintiffs' previous motion for a preliminary

injunction filed on March 22, 2010 which sought to halt construction at Ruland Road; and (3)

preliminarily enjoining Defendants from issuing any building permits, letters of approval, or

other consents allowing construction of one-bedroom units at Ruland Road. For the reasons that

follow, Plaintiffs' application is DENIED.

## BACKGROUND

The background of this case is set forth in this Court's prior decisions dated

March 23, 2005, November 29, 2005, July 8, 2010, as well as the Second Circuit's decision in

*Fair Housing in Huntington Comm. Inc. v. Town of Huntington, New York*, 316 F.3d 357 (2d Cir.

2003), familiarity with which is assumed. Thus, the Court will only state the facts necessary for

disposition of the instant application.

### The Original Complaint and Plaintiffs' First Request for a Preliminary Injunction

On May 8, 2002, plaintiffs FHHC, Senaye Green, Bernard Peyton, and Robert

Ralph filed the initial Complaint in this action against the Town, the Town Board, the Planning

Board, and S.B.J. Associates LLC ("SBJ") alleging, inter alia, that the development by SBJ of a

382-acre parcel of land located in the Town – presently known as The Greens at Half Hollow

(the "Greens") – would have a disparate impact on minorities with regard to housing because all of the proposed affordable housing was limited to seniors. The Complaint sought to enjoin the Town from proceeding with development of the Greens and also sought damages. There was no mention of Ruland Road whatsoever in the Complaint.

Soon after filing the Complaint, Plaintiffs sought a preliminary injunction directing the Town to revoke all then current permits allowing development of the Greens, enjoining the Town from issuing any further permits necessary for the development, and halting construction of the Greens by SBJ. By bench decision dated June 26, 2002, the Court denied Plaintiffs' motion. This decision was affirmed by the Second Circuit on January 17, 2003. *See Fair Housing in Huntington Comm.*, 316 F.3d 357.

### *The Amended Complaint and the Parties' Attempted Settlement*

On April 8, 2004, Plaintiffs filed an Amended Complaint dropping two plaintiffs (Senaye Green and Robert Ralph) and adding four new plaintiffs (Huntington Branch NAACP, Athena Hawkins, Lynda John, and Ian John). In addition, the Amended Complaint no longer named SBJ as a defendant.

Although the Amended Complaint continued to seek redress based upon the Greens project and the allegedly discriminatory effect of its senior housing, Plaintiffs added a new claim concerning the separate housing development at Ruland Road. Plaintiffs alleged that the Town's actions in recommending the approval of a proposed housing plan for Ruland Road – where the only affordable units were one-bedroom and studio apartments – was discriminatory. Plaintiffs alleged that Defendants knew or should have known that multi-bedroom units would increase the minority population while one-bedroom and studio units are far less likely to attract

3

minorities.

On March 23, 2005, the Court granted Defendants' motion to dismiss the Amended Complaint and the case was dismissed in its entirety. Thereafter, however, on November 29, 2005, the Court granted Plaintiffs' motion for reconsideration. Upon reconsideration, the Court denied Defendants' motion to dismiss Plaintiffs' first, second, third, and fifth causes of action. The fourth cause of action remained dismissed.

In May 2006, Defendants filed another motion to dismiss. However, in January 2007, the parties reached a settlement before Magistrate Judge William D. Wall and Defendants' motion was marked off the calender. After the settlement fell apart, Defendants' motion to dismiss the Amended Complaint was reinstated.

***Plaintiffs' First Order to Show Cause and the Court's July 8, 2010 Memorandum and Order***

On March 22, 2010, Plaintiffs filed an Order to Show Cause seeking to preliminarily enjoin Defendants from issuing any building permits, letters of approval, or other consents allowing construction of one-bedroom units at Ruland Road. The hearing on Plaintiff's application was adjourned sine die pending the Court's decision on Defendants' motion to dismiss the Amended Complaint.

By Memorandum and Order dated July 8, 2010, the Court dismissed Plaintiffs' Ruland Road claims. Essentially, the Court found that Plaintiffs' Ruland Road claims, which arose in 2000 but were not raised until 2004 when Plaintiffs filed the Amended Complaint, did not relate back to the original Complaint and were thus untimely. The Court also found that Plaintiffs had failed to allege a continuing violation. The remainder of Defendants' motion to dismiss – including that part which sought dismissal of Plaintiffs' claims concerning the Greens

– was denied.  Thus, as it now stands, the Amended Complaint contains allegations concerning

the Greens only; all claims regarding Ruland Road were dismissed.

That same day, the Court issued a separate Order denying Plaintiffs' application

for a preliminary injunction as moot since the Ruland Road claims upon which the motion was

based had been dismissed.  No appeal was taken from this Order, nor any motions for

reconsideration filed.

### *The Current Application*

Plaintiffs now seek to resurrect their Ruland Road claims via a proposed Second

Amended Complaint which adds allegations of continuing violations that occurred within the last

two years.  Specifically, Plaintiffs allege that on February 5, 2008, the developer submitted a site

plan application that included 28 two-bedroom units at Ruland Road.  In October 2008, however,

the Town directed the developer to withdraw its revised plan and replace it with a plan for all

one-bedroom units.  The developer withdrew its revised plan and, on January 14, 2010,

submitted an all one-bedroom plan.  Thereafter, at a March 10, 2010 meeting, the Planning Board

approved the all one-bedroom site plan.  Plaintiffs argue that these new allegations simply

describe relevant events that occurred long after the Amended Complaint was filed in 2004 and

constitute violations within the applicable two-year limitations period that are either: (a)

independent violations that are timely pled; or (b) part of continuing fair housing violations

lasting over the past decade.

In addition, although a fair reading of the proposed Second Amended Complaint

would appear to indicate that Plaintiffs still seek relief concerning the Greens, at least in the form

of declaratory relief and money damages, Plaintiffs now state that "[t]he proposed Second

Amended Complaint deletes the relief sought by Plaintiffs with regard to the Greens." (ECF No. 177 at 2.) Thus, Plaintiffs seek leave to file a proposed Second Amended Complaint seeking relief for Ruland Road only.[1] Plaintiffs also move to reinstate their previously filed motion for a preliminary injunction and ask the Court to preliminarily enjoin Defendants from proceeding with the Ruland Road development.

Defendants contend that Plaintiffs' 2008-2010 Ruland Road allegations are time barred because these allegedly new violations are "nothing more than the natural result" of an alleged wrong that occurred, and accrued for limitations purposes, in 2000. Defendants further claim that the continuing violation doctrine is inapplicable.

On September 16, 2010, the Court heard oral argument. For the reasons stated below, Plaintiffs' Order to Show Cause is denied in its entirety.

### DISCUSSION

Plaintiffs are not arguing that the allegations in the proposed Second Amended Complaint relate back to any of the previously filed complaints. Instead, they argue that the new allegations constitute both continuing and independent violations of the fair housing laws within the applicable two-year limitations period. In order to understand the statute of limitations issues raised in this application, a brief recitation of the underlying facts, as alleged in the Amended Complaint and set forth in the applicable Town Resolutions, is necessary.

---

[1] Plaintiffs shall advise the Court, via letter to be filed on or before December 3, 2010, whether they intend to pursue their claims in this action which pertain only to the Greens.

I.      *The Complaints and Resolutions*

    A.      *The Original Complaint and the September 12, 2000 Resolution*

        The original Complaint – which specifically challenged the exclusion of

minorities from the Greens – was filed in May 2002.  It alleged that by Resolution No. 2000-684,

dated September 12, 2000 (the "September 2000 Resolution"), the Town Board resolved to grant

the developer's request for a density bonus[2] with regard to the Greens without any provision for

affordable family housing.  Instead, the density bonus granted by the Town permitted the

developer to build 1,375 housing units – 1,250 more than the 125 units permitted by the Greens'

previous zoning – with all affordable units restricted to seniors.  Plaintiffs alleged that by

facilitating the development of age-restricted homes at the Greens, the Town was further

perpetuating Huntington's history of segregation in that senior housing generally results in a

disproportionately low occupancy by minorities.  The Complaint sought to enjoin the Town from

proceeding with development of the Greens and also sought damages.

        There was no mention of Ruland Road in the original pleading.  However, the

September 2000 Resolution which precipitated Plaintiff's claims did reference the anticipated

development at Ruland Road.  In a "WHEREAS" clause, it noted that the developer of the

Greens was also under contract to purchase 8.5 acres at Ruland Road "for which he has made a

separate application for a zone change on which he proposes to construct approximately 120,

one-bedroom, non-age restricted affordable housing units if a zone change is granted by the

Town." (September Resolution at 2, ECF No. 149-1 at 43.)  It "RESOLVED" that the developer

---

        [2] A density bonus allows for more homes per acre than existing zoning ordinarily
permits.

would post a bond with the Town in the amount of one million dollars "to secure its agreement to purchase the [Ruland Road] property and develop thereon approximately 120, one-bedroom, non-age restricted affordable housing []units . . . at the Sanctuary at Ruland Road, with construction to be commenced within six months of final site plan approval . . . ." (*Id.*) It further "RESOLVED":

> that, should the Sanctuary Project at Ruland Road zone change be approved by the Town Board within 120 days of passage of this resolution, subject to extension by further resolution of the Town Board but in no event to exceed one year from the date of passage of this resolution, and the site plan be approved by the Planning Board, the Department of Engineering Services Division of Building and Housing shall not issue Certificates of Occupancy for 200 of the market value condominium units at the Greens . . . until Certificates of Occupancy have been issued for all of the units at the Sanctuary Project at the Ruland Road site.

(*Id.*) It recognized, however, that the Ruland Road zoning change application was a separate application and "RESOLVED that no determination is hereby made regarding the merits of the Sanctuary Project at Ruland Road zone change . . . which shall be subject to full environmental review and public hearing and all other lawful requirements." (*Id.* at 3, ECF No. 149-1 at 44.)

**B.      *The Amended Complaint and the November 21, 2000 Resolution***

On April 8, 2004, Plaintiffs filed the Amended Complaint. The Amended Complaint sought redress based upon the senior housing at the Greens as alleged in the original Complaint, but added claims regarding the one-bedroom apartments proposed for Ruland Road, both of which, Plaintiffs proffered, would discriminate against minority families. The Amended Complaint alleged that the developer submitted its original Greens proposal to the Town in July 1999. This proposal "included a development plan for [Ruland Road] comprising two- and

three- bedroom homes that would at least partially ameliorate the discriminatory impact that the Greens development would have on Minority Families." (Am. Compl. ¶ 42.) The proposal "was effectively rejected when the Town failed to even vote on the plan for more than a year." (*Id.* ¶ 9.) After the proposal was revised, however, on September 11, 2000, "so that the only affordable units planned for [Ruland Road] were one-bedroom and studio apartments, the Town acted the very next day to recommend the housing plan's approval [for the Greens], passing [the September 2000 Resolution]." (*Id.*)

The Amended Complaint did not reference Resolution No. 2000-850, dated November 21, 2000 (the "November 2000 Resolution"), which explicitly changed the zoning of Ruland Road from R-40 (one-acre residential) to the higher density R-3M (Garden Apartment district), thereby allowing more homes to be built there. Nonetheless, in the motion papers on Defendants' motion to dismiss the Amended Complaint, it was presumed by all parties that the latest day Plaintiffs' Ruland Road claims could have accrued was the date the November 2000 Resolution was passed. (*See* Defs.' Mem. of Law in Supp., ECF No. 100-20 at 15 ("The Ruland Road rezoning was enacted by resolution 2000-850 on November 21, 2000."); Defs. Reply Mem., ECF No. 100-23 at 6 ("In the present case, the latest accrual date that plaintiffs can point to is November 21, 2000, when the Town passed the resolution which rezoned Ruland Road.").) Although the November 2000 Resolution only referenced R-3M Garden Apartment zoning and did not specify that the new zoning was limited to one-bedroom units, in a "WHEREAS" clause, the Resolution provided as follows:

> WHEREAS, the Town Board has taken cognizance of the subject application during proceedings in connection with zone change application #99-ZM-324 [regarding the Greens] of S.B.J.

9

Associates, LLC [the developer] and has adopted Findings in connection with application #99-ZM-324 pursuant to SEQRA, which recognizes the potential for the proposed Sanctuary (Ruland Road) development of 122 one-bedroom affordable housing units .
. . .

(ECF No. 169-9 at 1.)

## C.   *The Court Dismisses the Ruland Road Claims as Untimely*

By Memorandum and Order dated July 8, 2010, the Court dismissed Plaintiffs'

Ruland Road claims –  which the parties contended arose at the latest in November 2000 but

were not raised until 2004 when Plaintiffs filed the Amended Complaint –  as untimely because

they did not relate back to the original Complaint.  The Court found that while Plaintiffs' factual

allegations concerning Ruland Road may very well be significant with regard to Plaintiffs' proof

concerning the Greens, that did not mean that the original Complaint – which did not reference

the Ruland Road project – provided Defendants with adequate notice of Plaintiffs' Ruland Road

claims.  Instead, the Court found that the they were two separate housing developments

representing two purportedly distinct violations of the relevant statutes.

The Court also found that Plaintiffs had failed to allege a continuing violation:

> Plaintiffs' attempt to invoke the continuing violation doctrine has no merit.  Plaintiffs argue that the two Complaints "challenge an ongoing pattern and practice of racial discrimination constituting a continuing wrong for which the statute of limitations is continuously triggered and retriggered."  (Pls. Mem. of Law in Opp'n at 7.)   Plaintiffs' [Ruland Road] claims, however, arise out of the Town's November 2000 zoning decision which limited the size of the development to studio and one-bedroom units, a date which falls outside the two and three year limitation periods given that Plaintiffs filed the Amended Complaint in April 2004. Plaintiffs have not identified a single unlawful practice with regard to their [Ruland Road] claims that continued into the limitations period.

To the extent Plaintiffs suggest that the [Ruland Road] claims relate back because the original Complaint put Defendants on notice that the disputed conduct was of a continuing nature, this argument is similarly unavailing. As explained above, Plaintiffs' initial Complaint alleged a specific act of wrongdoing, i.e., the exclusion of minority families from the Greens, which is a distinct occurrence from the subsequent exclusion of minority families from [Ruland Road]. Although the original Complaint makes general reference to the Town's "ongoing exclusionary housing practices" (Compl. ¶ 1), and to Huntington's history of housing segregation, such general references are not sufficient to place Defendants on notice for all future alleged discriminatory acts with regard to housing within the Town.

(July 8, 2010 Memorandum and Order at 13.) Thus, the only claims remaining are those pertaining to the Greens.

**D.** ***The Current Application and the March 10, 2010 Resolution***

Plaintiffs now seek leave to file a Second Amended Complaint reasserting their Ruland Road claims based upon new factual allegations that occurred within the last two years. Essentially, Plaintiffs allege that in 2008, the developer submitted a site plan application for Ruland Road that included 28 two-bedroom units but was thereafter directed by the Town to withdraw its proposal and replace it with a plan for all one-bedroom units. The developer withdrew its revised plan and submitted an all one-bedroom plan which was adopted by the Planning Board by Resolution dated March 16, 2010 (the "March 2010 Resolution"). Specifically, the Resolution provides, in pertinent part:

RESOLVED, that prior to the plans being stamped approved, this project is conditioned upon all subject plans being revised to depict no greater than one hundred seventeen (117) one-bedroom units . . . .

(ECF No. 169-3 at 3.)

11

Plaintiffs argue that these new allegations simply describe relevant events that occurred long after the Amended Complaint was filed in 2004 and constitute violations within the applicable two-year limitations period that are either: (a) independent violations that are timely pled; or (b) part of continuing fair housing violations lasting over the past decade.

## II.     *Analysis*

### A.     *Whether Rule 15(a) or 15(d) Applies*

The first issue raised by the parties' briefs is whether Plaintiffs' application is properly analyzed as a request to amend under Rule 15(a) or as a motion to file a supplemental pleading under Rule 15(d). Rule 15(d) provides as follows:

> (d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P 15(d) (emphasis added).

Although Plaintiffs initially framed their application as seeking leave to amend under Rule 15(a), after inquiries from the Court as to whether Rule 15(d) applies, Plaintiffs now contend that because they "seek to supplement the complaint by adding events that occurred after it was filed, Rule 15(d) appears to be implicated." (ECF No. 175 at 1.) Defendants disagree, arguing that because the "very foundation of [the] claims Plaintiff seek to add . . . arose in 2000," Rule 15(d) is inapplicable.

Amended pleadings relate to matters that occurred prior to the filing of the

original complaint while supplemental pleadings are limited to events that have occurred

subsequent to the complaint. 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane &

Richard L. Marcus, *Federal Practice and Procedure* § 1504 (2d ed. 2010). Plaintiffs correctly

note, however, that the distinction between 15(a) and 15(d) is of little practical significance as the

standards used in ruling on a motion to amend or on a motion to supplement are generally the

same. *Id.*

It is within the court's discretion to grant or deny leave to amend or supplement

and leave should be freely granted "[a]bsent undue delay, bad faith, dilatory tactics, undue

prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany*

*& Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (leave to supplement) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)). *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.

2007) (leave to amend). In addition, "leave to file a supplemental pleading should be freely

permitted when the supplemental facts connect it to the original pleading." *Quaratino*, 71 F.3d at

66.

Here, whether Plaintiffs' application is treated under Rule 15(a) or Rule 15(d), the

threshold issue is the same, viz. are Plaintiffs' Ruland Road claims futile because they are time

barred. As discussed immediately below, the Court finds that the Ruland Road claims arising out

of the March 2010 Resolution are not time-barred and are therefore not futile.

**B.** **_Plaintiffs' Ruland Road Claims Arising_**
**_out of the March 2010 Resolution are Timely_**

Defendants maintain that the allegedly new violations occurring in 2008 and 2010

are nothing more than the manifestation of a wrong that arose for statute of limitations purposes

in 2000. In this regard, Defendants contend that the September 2000 Resolution "codified" the one-bedroom limit and this limitation was "reaffirmed" in the November 2000 Resolution. (ECF No. 176 at 2.) Thus, they argue that Plaintiffs' new allegations based upon Defendants' conduct in 2008 and 2010 are time-barred because a lawsuit challenging the 2000 Resolutions was not filed within two years of their enactment.[3]

Plaintiffs, on the other hand, argue that the 2000 Resolutions were simply the beginning part of a continuing violation of the fair housing laws, a continuing violation that achieved fruition in March 2010 when the Town finally approved an all one-bedroom site for Ruland Road. Alternatively, Plaintiffs assert that Defendants' conduct in October 2008 and thereafter constitute independent violations of the fair housing laws that fall within the applicable statute of limitations period even if they were alleged in a wholly separate action, since they occurred within the last two years.

The Court finds that whether Plaintiffs' Ruland Road claims are viewed as a continuing violation or as an independent violation of the fair housing laws, the result is the same, to wit, Plaintiffs' claims arising out of the March 2010 Resolution are timely. Contrary to Defendants' contentions, the September 2000 and November 2000 Resolutions did not "codify" the one-bedroom limit. Rather, the September 2000 Resolution "codified" the density bonus with regard to the Greens. It also noted in a "WHEREAS" clause that the developer of the Greens was under contract to purchase Ruland Road for which he had made a *separate* application for a zone change on which he *proposes* to construct 120 one-bedroom affordable

---

[3] It is undisputed that the limitations period for Plaintiffs' fair housing claims is two years.

14

housing units. Although it "RESOLVED" that the developer would post a one million dollar

bond to secure its agreement with the Town to purchase the Ruland Road site and develop the

one-bedroom units, and "RESOLVED" that if the Ruland Road zoning change was approved,

certificates of occupancy for some of the Greens' units would not issue until certificates of

occupancy had been issued for all of the Ruland Road units, it did not purport to resolve the

zoning change with regard to Ruland Road. In fact, it specifically "RESOLVED" that no

determination was being made with regard to the Ruland Road zoning change.

The November 2000 Resolution, on the other hand, did adopt a zoning change

with regard to Ruland Road but the resolution was limited to changing the zoning from R-40

(one-acre residential) to the higher density R-3M (Garden Apartment district). There is nothing

in the actual text of the resolution which prohibited multi-unit bedroom housing from being built

at Ruland Road or required all one-bedroom housing. Rather, the resolution simply changed the

zoning of the Ruland Road site so as to permit more housing units to be built at the site than had

been allowed under the previous zoning. While the November 2000 Resolution recognized the

"potential for the proposed Sanctuary (Ruland Road) development of 122 one-bedroom

affordable housing units" in a "WHEREAS" clause, under well-established Second Circuit case

law, such a reference did not create a binding obligation on the developer. *See Abraham Zion*

*Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985) ("Although a statement in a 'whereas' clause

may be useful in interpreting an ambiguous operative clause in a contract, 'it cannot create any

right beyond those arising from the operative terms of the document.'") (quoting *Genovese Drug*

*Stores v. Connecticut Packing Co.*, 732 F.2d 286, 291 (2d Cir. 1984)). *See also Aramony v.*

*United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (citing *Abraham Zion* and finding that a

"Purpose of the Plan" section of a benefits plan was "analogous for these purposes to a contract's 'whereas' clause").

The March 2010 Resolution, however, "RESOLVED" to approve a site plan for Ruland Road specifically limited to "no greater than one hundred seventeen (117) one-bedroom units." (March 2010 Resolution at 3, ECF No. 169-3 at 3.) Thus, whether Plaintiffs' claims are viewed as a continuing violation, i.e., the continuing efforts by Defendants to block affordable multi-unit housing from being built at Ruland Road, with the last asserted act taken in furtherance of that practice occurring in March 2010, or whether they are viewed as independent violations of the fair housing laws accruing in March 2010 when the Town finally effectuated the one-bedroom limit, Plaintiffs' Ruland Road claims arising out of the March 2010 Resolution are timely.

### C.        *Plaintiffs' Request to Amend the Complaint is Denied*

Having found that Plaintiffs' Ruland Road claims accrued in March 2010 when the Town adopted the one-bedroom limitation – which is *after* Plaintiffs filed the original Complaint – the Court applies Rule 15(d) in analyzing Plaintiffs' request for leave to amend to assert the Ruland Road claims in this action.[4] Under Rule 15(d), "[t]he threshold consideration for the district court is whether 'the supplemental facts connect [the supplemental pleading] to the original pleading.'" *Weeks v. N.Y. State*, 273 F.3d 78, 88 (2d Cir. 2001) (quoting *Quaratino*, 71 F.3d at 66), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "If there is a relationship, then leave to supplement should be 'freely permitted'

---

[4] Given the prejudice that would result to Defendants were the Court to permit Plaintiffs to amend, discussed *infra*, the result reached by the Court would be the same under Rule 15(a).

absent 'undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the

proposed pleading, or futility.'" *Id.* (quoting *Quaratino*, 71 F.3d at 66).

The Court has already found for purposes of the relation back doctrine that

Plaintiffs' Ruland Road claims are based on an "entirely distinct set of factual allegations" from

those alleged in the original Complaint and therefore do not relate back to the original pleading.

(July 8, 2010 Memorandum and Order at 13-14.)  The Court found as follows:

> The new allegations regarding [Ruland Road] do not merely
> "amplif[y]" or "state[] in a slightly different way" Plaintiffs' claims
> concerning the Greens. *Cf. Slayton [v. Am. Express Co.]*, 460 F.3d
> [215], 229 [(2d Cir. 2006)].  Instead, they "present an entirely new
> claim for relief based upon facts not included in the original
> pleading."  The original Complaint alleged that the Greens was
> inherently discriminatory against minority families because all of
> the affordable housing was restricted to seniors.  The Amended
> Complaint, by contrast, seeks to additionally attack the proposed
> [Ruland Road] development as discriminatory due to the small size
> and configuration of the apartments which will allegedly deter
> minority families.  They are two separate housing developments
> representing two distinct violations of the relevant statutes.  Far
> from providing Defendants with adequate notice, it would require a
> "leap of imagination" on the part of Defendants to anticipate that
> Plaintiffs' suit on the Greens would implicate them with regard to
> [Ruland Road].  *Cf. id.*

(*Id.* at 13.)

Although the Court recognizes that the instant application to amend is governed

by a different standard, the Court nonetheless finds the above reasoning instructive and concludes

that, in the exercise of its discretion, Plaintiffs' Ruland Road claims are not sufficiently related to

those asserted in the original Complaint.  Moreover, Plaintiffs appear to concede that the only

claims remaining in this action, i.e., those concerning the Greens, are now moot as Plaintiffs have

indicated that the proposed Second Amended Complaint seeks relief based upon Ruland Road

17

only. Alternatively, should Plaintiffs not withdraw the Greens claims, Defendants seek

permission to move for summary judgment thereon, noting that discovery on these claims is now

complete. However, discovery is not complete concerning the 2008-2010 Ruland Road

allegations. In fact, there has been no discovery at all with regard to Plaintiffs' 2010 allegations

and, according to Defendants, no depositions on the 2008-2010 allegations have been taken.

Thus, permitting Plaintiffs' to amend in this case will unduly delay the instant litigation and

result in undue prejudice to Defendants. Accordingly, because the supplemental claims that

Plaintiffs seek to add are not sufficiently connected to the claims in the original Complaint and

will unduly delay the litigation of this case, Plaintiffs' application for leave to amend is denied.

Should Plaintiffs wish to pursue their Ruland Road claims, they may endeavor to do so in a

separate action.

## *CONCLUSION*

For all of the above reasons, Plaintiffs' Order to Show Cause is DENIED in its

entirety.

**SO ORDERED.**

Dated: November 18, 2010
       Central Islip, New York                    /s                        
                                                   Denis R. Hurley,
                                                   United States District Judge

18